## THE KELLYVILLE COAL COMPANY

*v.*

## JENNIE BRUZAS.

*Opinion filed October 23, 1906—Rehearing denied Dec. 11, 1906.*

1. MINES—*when rule requiring master to furnish a safe place does not apply.* The rule requiring the master to use reasonable diligence to furnish a reasonably safe place for his servants to work does not apply to those servants whose duty it is to make dangerous places safe; and this is true in the case of mines, notwithstanding the statute.

2. SAME—*mine manager not required to personally accompany and direct rock gang.* Section 18 of the Mines act, which prohibits mine owners or operators from allowing men to enter any place which the mine examiner has marked as dangerous, "except under the direction of the mine manager," does not mean that the mine manager must personally accompany the rock gang sent to remedy the unsafe condition and personally direct their work.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. J. W. CRAIG, Judge, presiding.

This is an action on the case in the circuit court of Vermilion county, brought by appellee, Jennie Bruzas, against appellant, the Kellyville Coal Company, to recover damages for causing the death of her husband, Joseph Bruzas, in defendant's coal mine. On the trial before the court and a jury, judgment was rendered in plaintiff's favor for $1700, which has been affirmed by the Appellate Court, and this further appeal is prosecuted.

The facts are, that appellant operated a coal mine in said county known as mine No. 2. The accident occurred May 11, 1904, and on the night before, the mine examiner had discovered a loose rock in the roof of "the fourth north entry off of the third west entry off of the second south entry," and marked it with a piece of chalk, which, as provi-

ded by the statute, indicated that it was dangerous, and must be either taken down or timbered up. This condition was reported by him to the mine manager, who notified the night boss or assistant mine manager, and gave him directions concerning the same. In the mine at that time were employed at night twenty-six men, whose business it was to go over all the entries for the purpose of removing dangerous conditions and making them safe for the next day's work. This gang was known in mining parlance as the "rock gang," and were under the charge and directions of the night boss or assistant mine manager, who on this occasion divided them into squads and told them where the dangerous places were. Joseph Bruzas, the deceased, was a member of one of these squads, and on the night of May 11 his squad was sent to the above described entry for the purpose of removing the dangerous condition which had been reported by the mine examiner. In attempting to either clean up the rock which had already fallen from the roof, or while trying to prop up the loose rock, a large portion of it fell upon and killed him.

H. M. STEELY, for appellant.

DANIEL BELASCO, and PENWELL & LINDLEY, (WALTER C. LINDLEY, of counsel,) for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The original declaration consisted of four counts, but a demurrer was sustained to the first and third and the court instructed the jury to find for the defendant under the second. The finding and judgment for the plaintiff were upon the fourth and an additional count. The wrong charged in the fourth was the failure of the mine manager to keep the men out of the entry which had been marked dangerous and in which plaintiff's intestate was killed, "except under the direction of the mine manager, until all conditions had been made safe." The additional count is: "That the de-

fendant willfully ordered the said Joseph Bruzas to enter the said entry and work therein in removing a certain fall of rock while the roof of the entry at the place was in a weak, unsafe and dangerous condition, * * * without the said mine manager being present directing the said work and without being under the direction of the said mine manager," etc. Both of these counts are based upon the eighteenth section of the statute concerning mines and miners. (Hurd's Stat. 1903, chap. 93, p. 1260.) That section reads as follows:

"Sec. 18. (*a*) A mine examiner shall be required at all mines. His duty shall be to visit the mine before the men are permitted to enter it, and, first, he shall see that the air current is traveling in its proper course and in proper quantity. He shall then inspect all places where men are expected to pass or to work, and observe whether there are any recent falls or obstructions in rooms or roadways or accumulations of gas or other unsafe conditions. He shall especially examine the edges and accessible parts of recent falls and old gobs and air-courses. As evidence of his examination of all working places, he shall inscribe on the walls of each, with chalk, the month and the day of the month of his visit.

"(*b*) When working places are discovered in which accumulations of gas, or recent falls, or any dangerous conditions exist, he shall place a conspicuous mark thereat as notice to all men to keep out, and at once report his finding to the mine manager. No one shall be allowed to remain in any part of the mine through which gas is being carried into the ventilating current, nor to enter the mine to work therein, except under the direction of the mine manager, until all conditions shall have been made safe."

The decision of the case must turn, under the foregoing counts, upon the construction of this last clause,—*i. e.;* as to the meaning of the words, "except under the direction of the mine manager."

It is insisted by counsel for appellant that the clause has no application to men working in the mine for the purpose of removing dangerous conditions, but was intended simply for the protection of the miners and others engaged in the performance of the work of mining. On the other hand, counsel for appellee contend that by the clause the duty is imposed upon the mine manager, upon being notified of dangerous conditions, to exclude all persons from the place where the danger exists, except those who work under his immediate directions or supervision, and on the theory of the declaration that the deceased was sent into the dangerous entry unattended by the mine manager, the statute was violated and the defendant thereby became liable. The circuit court seems to have adopted this construction. It instructed the jury on behalf of the plaintiff:

"That by the law of this State every mine owner is under the duty not to allow any one to enter the mine to work therein, except under the directions of the mine manager, until all conditions shall be made safe; and if you believe, from the preponderance of the evidence in this case, that the defendant company knowingly permitted the deceased to enter this mine, as charged in the declaration, while the mine was not in safe condition, and to work in that part of the mine where the conditions were not safe, and allowed him to work therein without being directed by the mine manager, and the deceased was killed by reason thereof, as charged in the declaration, then you should find for the plaintiff."

This instruction was calculated to lead the jury to understand that if the deceased, at the time of the accident, was not working under the personal direction of the mine manager the statute was violated and the defendant liable; and this view of the trial court was more clearly shown by its refusal to give certain instructions asked by the defendant, among others the fourteenth, which would have told the jury, "where dangerous places are discovered in the

mine, that the statute gives the right to have men enter the mine under the direction of the pit-boss or mine manager and remedy such dangerous conditions, and the law does not require that while they are doing such work and removing such dangerous conditions that the pit-boss or mine manager should be personally present to personally superintend the work." To the giving of the first instruction and refusal of the fourteenth proper exceptions were preserved, and error is now assigned upon that ruling of the court.

In our opinion the construction given to the statute by the circuit court and approved by the Appellate Court is entirely too strict. All will agree that the language quoted, "except under the direction of the mine manager," should receive a reasonable construction and one which will render the statute capable of practical enforcement. To illustrate: the mine in question was a large one, requiring almost the entire night for the mine examiner to make an examination of the places where the men were to work the next day. The rock-men were under the direction of the assistant mine manager, and the evidence shows that after he had notified the men as to the places where the dangerous conditions existed, it was their duty to go to such places and remove the dangerous conditions. The rock gang were men skilled and experienced in the performance of their duties. On account of the amount of work to be performed it was practically impossible for the mine manager to be personally present and direct these experienced men specifically as to what they should do and how they should do it. It is not claimed in this case that those men were not in every way competent to perform their particular duties. If the statute must receive the construction placed upon it by the courts below, it would be a matter of no particular consequence whether they were experienced in the performance of that work or not, because the mine manager would be required to be personally present and specifically direct what should be done, and therefore any common laborer could perform the mere

manual labor. There were in this mine a large number of rooms or entries in which there were liable to be fallen rock, loose roofs, etc., rendering them more or less dangerous, and we think where the mine owner has employed a competent licensed mine manager and competent rock-men, and when the mine manager has been informed by the report of the examiner as to the various dangerous conditions, placing his danger signal at such places, as required by the statute, and the mine manager determines that the rock gang shall enter the rooms and entries for the purpose of removing the dangerous conditions, and so orders, the employees whose duty it is to make the place safe should be held to be working under the manager's directions, within the meaning of the statute. One of the accepted meanings of the word "direction" is, "the act of governing, ordering or ruling," and it would seem that where the language is general, as here, "under the direction," anything which brings the conduct of the rock-men reasonably within the control of the mine manager in the performance of their duties would be a compliance with the statute. At the time of this accident the deceased and those with whom he was working were under the direction of the assistant mine manager, to the extent that he had notified them to go to the places where the danger existed and remove the dangerous conditions. He, the assistant mine manager, was present in the mine, and if extraordinary conditions were discovered the rock-men could have called upon him for more specific directions. They were, within the meaning of the term above set forth, under his general directions. He directed them when to enter the dangerous places and to remove the danger.

There is some evidence in the record to the effect that the deceased was not an experienced rock-man, and was not familiar with the English language and could not understand the directions of the assistant mine manager; but, as before stated, this action is not based upon any omission of duty on the part of the defendant in that regard.

We are not to be understood as holding that the statutory duties of the defendant, its mine examiner or mine manager are in any way to be relaxed. If the examiner had failed to use reasonable diligence to discover the dangers in the entry in question or had not placed his danger signal there, or if the mine manager or his assistant had recklessly ordered the deceased into the place of danger without proper warning, the defendant could have been properly held liable; but here the *gravamen* of the defendant's offense is that the mine manager did not personally accompany the deceased and specifically direct the work. The rule which requires the master to use reasonable diligence to furnish a reasonably safe place for his employees to work has no application to those whose duty it is to make dangerous places safe. Such employees assume the additional hazard of their employment, and necessarily so. (*Finlayson* v. *Utica Mining Co.* 67 Fed. Rep. 510; *Colorado Coal and Mining Co.* v. *Lamb,* 40 Pac. Rep. 251; *Moon Anchor Consolidated Coal Mines* v. *Hopkins,* 111 Fed. Rep. 298.) These authorities, it is insisted, have no application here, for the reason that the action is not at common law but under the statute. In our opinion, however, the statute, fairly construed, does not change the foregoing common law rule. What we desire to be understood as holding is, that the statute does not require that the mine examiner shall accompany the rock-men and personally direct them in removing dangerous conditions from a mine.

Other grounds of reversal are strenuously urged, but in view of the foregoing construction of the statute they become unimportant.

For the reason stated the judgment of the Appellate Court must be reversed, and the case will be remanded to the circuit court for further proceedings not inconsistent with the views here expressed.

*Reversed and remanded.*