## Nick Romeo, Administrator, Appellee, v. The Western Coal & Mining Company, Appellant.

1. INSTRUCTIONS—*when upon applicability of assumed risk rule erroneously refused.* *Held,* that an instruction was property refused which was to the effect that if it was the duty of the deceased and others to clean up falls and take down overhanging rock and slate and make dangerous places safe and that he was so engaged, then the rule of law which requires the master to use reasonable care to furnish the servant a reasonably safe place to work had no application and the servant assumed the risk of the dangers of the employment.

2. INSTRUCTIONS—*must be predicated upon evidence.* A modification of an instruction material in character which is not predicated upon any evidence in the cause is erroneous.

3. DAMAGES—*what recoverable in death case where next' of kin are collateral kindred.* "If the next of kin are collateral kindred of the deceased and have not been receiving from him pecuniary assistance and are not in a situation to require it, it is immaterial how near the relationship may be, only nominal damages can be given because there has been no pecuniary injury."

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Williamson county; the Hon. A. W. LEWIS, Judge, presiding. Heard in this court at the March term, 1910. Reversed and remanded. Opinion filed August 5, 1910.

WILLIAM H. WARDER and L. O. WHITNEL, for appellant.

WILLIAM W. CLEMENS and BENJAMIN W. POPE, for appellee.

MR. JUSTICE SHIRLEY delivered the opinion of the court.

Appellee brought an action on the case against appellant to recover damages for negligently causing the death of appellee's intestate, Bruno Gareffa.

The declaration with its several amendments contained three counts. Each count avers deceased was employed in the coal mine of appellant, in the first count in removing coal dirt, rock, slate and other substances from an entry, in the second that he was employed to clean up falls of rock and other substances from rooms and entries and in the third

count that he was employed in cleaning an entry, and removing therefrom certain substances which had fallen from the roof. Each count avers a duty upon appellant to have furnished the deceased a reasonably safe place to work, and for a breach of such duty it is averred that there were above and over the entry in which deceased was at work loose rock, slate and dirt, unsupported and dangerous, of which appellant had notice, and which were unknown to deceased.

Each count except the third further avers a negligent order to deceased by appellant to work in clearing up loose rock, etc., in such dangerous place in the entry, and further avers that while cleaning up the rock, slate and dirt which had fallen in said entry beneath said dangerous roof, in the exercise of care for his own safety a large amount of rock, slate and dirt fell upon the deceased from said roof and he was thereby killed.

Appellant's contention here is that the trial court committed error in giving and refusing instructions; in giving expression to improper and prejudicial remarks in presence of the jury, and that the damages recovered were excessive.

It is insisted it was shown by evidence that it was the duty of the deceased in the line of his employment to make dangerous places safe in appellant's mine and that the court erred in ignoring this feature of the case in the instructions given for appellee, and refusing all instructions asked by appellant based upon such alleged duty.

The testimony showed that appellant had gangs of men whose duty it was, when a fall occurred in an entry, to clean up and remove the rock, slate and debris which had fallen in order that the entry might be made passable, and also to make the roof safe by taking down any loose overhanging material, or to timber up the roof to prevent further falls, or to do both if necessary to make the place safe for the passage of men and animals. The object of removing the debris and caring for the roof was to make the place safe. To accomplish this appellant had both rock men and timber men; the rock men to remove the fallen debris, and the timber men to put up the timber supports if necessary.

Romeo v. The Western Coal & Min. Co., 157 Ill. App. 67.

The deceased was one of the rock gang and had nothing to do with timbering and putting up supports, and while there seemed to have been a division of labor between the men who cleaned up and those who timbered, and put up the supports, the main purpose of both kinds of labor as the evidence tends at least to show, was to make the place where the fall had occurred safe.

The overhanging rock and material left in the roof in case of a fall was examined and tested by sounding and striking it with a pick and if found to be loose or in danger of falling it was taken down, or if it was not feasible to take it down it was supported by timbers. In this case it was being sounded and examined by Buck who was the pit boss and who had control over the rock gang. At the time Buck was sounding it, it fell upon the deceased, who with others of the rock gang had for some minutes been cleaning up the fallen debris. The witness Uzytes was a timber man who testified that his business was to make safe the dangerous places, that on this occasion Buck directed the witness to go to the place and clean up the slate and to timber up afterwards and that he worked with the other men cleaning up, and was so working when the rock fell. There was evidence that when rock men went to a fall it was usual, customary and practical for them to sound the roof to see whether it was safe before cleaning up, or in danger of further falls, and if in danger of falling to take it down.

This evidence we are of opinion, shows that when a fall occurred in an entry it left a dangerous place which it became necessary to make safe, and to accomplish this it was necessary to remove the fallen rock, slate and dirt out of the passageway, take down the loose rock and slate overhead if possible, and then if necessary to support the roof by timbering, and it tends at least to show that all persons so engaged together, even if in different divisions of labor as rock men and timber men were engaged in the work of making the place safe. The evidence shows that some of the rock men endeavored with sounding and picks to take down the loose rock.

As the evidence tended to show that deceased was so engaged in assisting to make the place safe at the time he was killed appellant had the right to have the court instruct the jury as to the question of its liability in such case.

The fifth refused instruction asked by appellant advised the jury in substance that if it was the duty of the deceased and others to clean up falls and take down overhanging rock and slate, and make dangerous places safe, and that he was so engaged, then the rule of law which requires the master to use reasonable care to furnish the servant a reasonably safe place to work had no application, and the servant assumed the risk of the dangers of the employment. To the same effect was the sixth instruction asked by appellant and refused.

These instructions were as we have said based upon the evidence; they stated a correct rule of law and it was error to refuse them. Fessenden v. Doan, 188 Ill. 228.

"When a piece of property is out of repair the men who are employed in making it safe take upon themselves whatever of added risk comes from the existing conditions of the place or work." Bailey's Personal Injuries relating to master and servant, Sec. 3022. "The rule which requires the master to use reasonable diligence to furnish a reasonably safe place for his employees to work has no application to those whose duty it is to make dangerous places safe." Kelleyville Coal Co. v. Bruzas, 223 Ill. 595.

Instruction number one as asked by appellant instructed the jury that the burden was upon appellee to prove that appellant had knowledge of the dangerous condition, or by the exercise of reasonable care could have had; that the deceased did not know of the dangerous condition and did not have equal means of knowing with appellant. The instruction was modified by the court by adding "or was acting under a negligent order as explained in other of these instructions."

We are of opinion there was no evidence of a negligent order upon which to base the modification. There was no order of any sort given to the deceased. The only evidence

of any direction by Buck the boss was to the timber man Uzytes to whom he said: "They are going to clean up and you can go and timber up," and further "Go ahead and clean up."

There was evidence that the deceased stood by and watched his companions make an effort to pull down the overhanging rock and slate before it fell upon him; that there was a large fissure or crack in it, and that it was apparent it was in imminent danger of falling. This evidence tended to show he had full knowledge of the dangers, and with such knowledge the risk of remaining under it would be assumed unless excused by a negligent order. In the absence of evidence of any order to deceased there was nothing upon which to base the modification and it was erroneous. As a discussion of other instructions of which complaint is made would involve principles already considered it is not necessary to consider them.

It is not necessary to comment upon the remarks of the trial judge to which exception was taken, in view of the conclusions reached by the court in this opinion.

The court on behalf of appellee gave the following instruction on the measure of damages:

"You are instructed that the next of kin of Bruno Gareffa as shown by the undisputed evidence are his mother, sister and four brothers and on the question of damages if you should find for the plaintiff the law is that the relatives might reasonably expect to derive pecuniary benefit from the continuation of the life of the deceased and in arriving at the amount of damages you may take into consideration such reasonable expectation of benefits from the continuation of the life of the said Bruno Gareffa as far as the same appears from the evidence in the case."

Except the mother, the relatives left by deceased were collateral kindred. He was twenty-seven years old and there is no evidence that the collaterals were dependent upon him or received any thing from him. The only evidence is that he sent his mother $25 or $30 each month. The statute

makes the pecuniary loss of the widow and next of kin the sole measure of damages.

"If the next of kin are collateral kindred of the deceased and have not been receiving from him pecuniary assistance and are not in a situation to require it, it is immaterial how near the relationship may be, only nominal damages can be given because there has been no pecuniary injury." C. & A. R. R. v. Shannon, 43 Ill. 338; North Chicago Street R. R. Co. v. Brodie, 156 id. 317; C. P. & St. L. R. R. Co. v. Woolridge, 174 id. 330; Rhoads v. C. & A. R. R. Co., 227 id. 328.

"It is only where the relation of next of kin are parent and child or husband or wife that the law presumes damages from proof of death caused by negligence." C. & N. W. R. R. Co. v. Swett, Admr., 45 Ill. 197; Holton v. Daly, Admx., 106 id. 131; C., B. & Q. R. R. v. Gunderson, 174 id. 495.

It was not a presumption in this case that the collateral relations "might reasonably expect to derive pecuniary benefit from the continuation of the life of the deceased."

The instruction upon the measure of damages was erroneous.

The judgment of the Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*