# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ILLINOIS.

---

STEFANO PAIETTA *et al.* Plaintiffs in Error, *vs.* THE ILLI-
NOIS ZINC COMPANY, Defendant in Error.

*Opinion filed December 17, 1912.*

1. MINES—*work of removing dangerous conditions need not be
personally directed by mine manager.* Where company-men em-
ployed in a coal mine are directed by the night boss and assistant
mine manager to remove a loose rock in the roof of an entry, the
work must be regarded done under the direction of the mine man-
ager, within the meaning of the statute. (*Kellyville Coal Co.* v.
*Bruzas,* 223 Ill. 595, followed.)

2. SAME—*the Mines and Miners act must receive a reasonable
construction.* The Mines and Miners act must receive a reason-
able construction, and not one which will require a mine exam-
iner to do a useless or unnecessary thing, which would not con-
duce to the safety of persons working in the mine.

3. SAME—*what not contemplated by the Mines and Miners act.*
Where company-men engaged in increasing the height of an en-
try, which has been duly examined and reported safe, loosen a
rock in the roof at the first shot, and the assistant mine manager
calls their attention to the rock and its dangerous position and
directs them to remove it before firing another shot, it is not with-
in the contemplation of the Mines and Miners act that the rock
be marked and reported as dangerous before the men proceed to
remove it.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

J. L. MURPHY, and B. P. BARASSA, for plaintiffs in error.

McDOUGALL, CHAPMAN & BAYNE, for defendant in error.

Mr. JUSTICE HAND delivered the opinion of the court:

This was an action on the case commenced by the plaintiffs (the father and mother of Louis Paietta) against the defendant, in the circuit court of LaSalle county, to recover damages for the death of their son, occasioned, as it is claimed, by the willful violation by the defendant of the Mines and Miners act. A trial was had before the court and a jury, and at the close of the plaintiffs' evidence, under the direction of the court, a verdict was returned in favor of the defendant, upon which verdict, after a motion for a new trial had been overruled, the court rendered judgment. That judgment has been affirmed by the Appellate Court for the Second District, and that court having granted a certificate of importance, a writ of error has been sued out from this court to review the judgment of the Appellate Court.

The declaration consisted of three counts, each of which averred that the defendant was engaged in mining coal at Oglesby, in said county; that Louis Paietta was in the employ of the defendant as a company-man, and that while thus engaged a rock from the roof of one of the entries of said mine fell upon him and killed him. The first count charged that on the 26th day of February, 1906, there was a rock that was loose in the roof of one of the entries of the defendant's mine and liable to fall, and that the defendant wrongfully and willfully allowed Louis Paietta to enter

the mine to remove said rock, not under the direction of its mine manager and before all conditions in said mine were made safe, in violation of the statute, and that while he was engaged in removing said rock it fell upon him and killed him. The second count charged that the defendant wrongfully and willfully failed, by its mine examiner, to see that the rock which fell from the roof of the entry and injured the deceased was properly marked by a danger sign or that a danger sign was displayed at that place, as required by the statute; and the third count charged that the defendant wrongfully and willfully failed to cause the mine to be visited by a duly qualified examiner on the day of the accident before the men were permitted to enter the mine and to inspect all places where men were to pass and to work, and wrongfully and willfully failed to cause a conspicuous mark to be displayed at the place where the rock that fell and injured the deceased was located, and wrongfully and willfully failed to cause a daily record of the condition of the mine to be kept, as required by statute.

The undisputed facts are: The defendant was engaged in operating a coal mine, and Louis Paietta, who was about twenty-three years of age, was in its employ as a company-man. It was his duty, as such company-man, to clear up the roads and ways of the mine after the coal miners had left the mine at the end of each day,—that is, to clear up any falls which might have occurred during the day, and if the entries were not high enough, to make them the proper height, and, in general, to put the mine in condition for the work of the miners the next day. He had been employed by the defendant in that work for several months and was familiar with his duties. The mine manager was a man by the name of John Carline, and James DuBois was the night boss and assistant mine manager and mine examiner of the defendant. On the night previous to the injury DuBois made an examination of the mine and found the place where Paietta was injured to be in a safe condition and so re-

ported.   At the time of day at which Paietta was injured, DuBois, as mine examiner, had not commenced his daily inspection for the next day.   At about four o'clock of the day of the accident Carline directed DuBois, who had just come into the mine, to cause the rock in one of the cross-entries, called Steele's entry, to be blown off, so as to increase the height of the entry at that place.   At about six o'clock in the evening DuBois went to the entry and marked the place where the company-men were to drill for the purpose of blasting the rock.   He then went to the place in the mine where Paietta and Charles Blow, another company-man, were at work, and directed them, after they had eaten their suppers, to go to Steele's entry and blast off the rock.   At about nine o'clock he returned to the entry and found that one shot had been fired and that Blow was adjusting the machine for the purpose of drilling another hole preparatory to firing a second shot, and that Paietta was cleaning up the rock that had been thrown down by the shot which had been fired.   DuBois then discovered that the rock which afterwards fell upon Paietta had been loosened by the shot that had been fired, and said to Paietta and Blow to take it down before they fired another shot.   He took a pick and struck the rock in their presence and stated to them to be careful, as the rock was very bad.   He then left them.   The ends of the rock that fell rested upon the rib and a pile of gob, and its center was supported by a wooden prop.   Blow went some thirty or forty feet from the place where they were at work, to get some oil for his miner's lamp, and while he was away Paietta struck the wooden prop twice with a sledge, when the prop fell and with it the rock, and Paietta was caught beneath the rock and killed.   At the time he struck the prop Blow called to him to be careful, as the rock was bad.

It is first contended that the defendant violated the statute by permitting Louis Paietta to enter the mine and work at removing the rock without being under the immediate

supervision and direction of its mine manager or his assistant. In *Kellyville Coal Co.* v. *Bruzas,* 223 Ill. 595, the precise question raised here was raised and was decided adversely to the contention of the plaintiffs in error. In that case Joseph Bruzas, a company-man, in company with other workmen, was sent by the mine manager into an entry to remedy certain dangerous conditions in the roof of the mine which had been reported by the mine examiner, and while thus engaged he was struck and killed by a rock which fell from the roof. It was contended in that case that the statute imposed upon the mine owner or operator the duty, upon being notified of a dangerous condition in the mine, to exclude all persons from the place where the dangerous condition existed, except those who worked under the immediate direction and supervision of its mine manager in remedying the dangerous condition. The trial and Appellate Courts adopted that view, but this court was of the opinion the construction thus put upon the statute was too narrow, and held that the statute did not require the mine manager to personally accompany the company-men, who were designated in that case as the "rock gang," when sent to remedy an unsafe condition in the mine and to personally direct their work. The court, on page 600, while considering the question here raised, said: "One of the accepted meanings of the word 'direction' is, 'the act of governing, ordering or ruling,' and it would seem that where the language is general, as here, 'under the direction,' anything which brings the conduct of the rock-men reasonably within the control of the mine manager in the performance of their duties would be a compliance with the statute. At the time of this accident the deceased and those with whom he was working were under the direction of the assistant mine manager, to the extent that he had notified them to go to the places where the danger existed and remove the dangerous conditions. He, the assistant mine manager, was present in the mine, and if extraordinary

conditions were discovered the rock-men could have called upon him for more specific directions. They were, within the meaning of the term above set forth, under his general directions. He directed them when to enter the dangerous places and to remove the danger." Here the night boss or assistant mine manager of defendant was in the mine. He went to the place where the danger was found to exist and there found Paietta and Blow and directed them to remedy the dangerous condition by removing the rock, and the deceased, at the time he was injured, was, we think, within the meaning of the statute, clearly acting under the direction of the mine manager of the defendant.

We are of the opinion this case cannot be distinguished from the *Kellyville Coal Co. case,* as it is sought to be, on the ground that the dangerous place in the mine in that case was marked with a danger sign while the place which was dangerous in this case was not so marked. In that case a danger sign was necessary, while a danger sign was not necessary in this case. The law will not impose upon a mine manager or examiner the duty to mark a place as dangerous which was originally safe and only became dangerous by the act of the company-men in performing the work of blasting rock from the roof, which they had been directed to do by the mine manager.

It is further urged (1) that the mine examiner of the defendant failed to examine the mine; (2) that he failed to mark as dangerous the rock that fell and injured the deceased; and (3) that he failed to report the result of his examination, as required by the statute. These contentions may properly be considered together.

The evidence is undisputed that the mine was examined the day previous to the accident and reported as safe; that the dangerous condition in the entry-way was caused by the shot which had been fired by Paietta and Blow; that DuBois discovered the dangerous condition in the rock, and almost immediately after the shot was fired called the at-

tention of Paietta and Blow to it and directed them to remedy it before they fired a second shot. The statute should receive a reasonable construction, and a mine examiner ought not to be required to do a useless or unnecessary thing and something that would not conduce to the safety of persons working in the mine over which he has supervision. In this case the roof in the entry was in a safe condition but was not high enough above the floor of the entry. The company-men were directed to blow off a portion of the roof. After the first shot was fired it was discovered that the shot had loosened a rock in the roof near where the shot had been placed, and the company-men were immediately notified by the assistant mine manager to remove the rock before the second shot was fired. To have marked the rock with a danger signal under such circumstances would have been a useless thing to do, and would not have added anything to the knowledge or safety of the company-men who were directed to remove the loosened rock. The company-men are presumably men skilled in caring for and keeping safe the mine, and when they are called upon by the mine manager to remedy a defect in the roof of the mine and in so doing they render the roof unsafe, it would be clearly unreasonable to require a mine examiner to be present at all times to mark the places which, while performing their work, the company-men have rendered unsafe. The company-men were performing their work under the direction of the assistant mine manager. He pointed out to them the dangerous condition in the rock, and it was not necessary that a danger mark be placed upon the rock as each new danger arose during the progress of the work.

We are of the opinion the trial and Appellate Courts properly held that there could be no recovery under the second and third counts of the declaration.

Finding no reversible error in this record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*