## Nick Riggio, Appellee, v. Chicago-Sandoval Coal Company, Appellant.

1. MINES AND MINERALS, § 108*—*when duty of mine examiner to mark place as dangerous.* Where dangerous conditions exist in the face of a mine room when it is examined, it is the mine examiner's duty to mark it as dangerous, even though he thinks there is no danger from such conditions.

2. MINES AND MINERALS, § 108*—*when mine owner liable for injuries to miner because of failure of mine examiner to mark roof as dangerous.* In an action by a mine employee to recover for injuries received by a fall of slate from the roof in a room which had not been marked as dangerous by the examiner, though he knew the conditions, the employer is not relieved from liability by the fact that plaintiff was not only employed as a miner but to remove slate from the roof, and its liability is the same without regard to which capacity plaintiff was working in when injured.

3. MINES AND MINERALS, § 82*—*when employee may be sent to dangerous place to make it safe.* When a dangerous place in a mine has been examined and marked as required by statute, the employer may send an employee there to work and make the dangerous place safe without incurring further liability.

4. MINES AND MINERALS, § 108*—*who entitled to benefit of statute as to marking dangerous places.* The duty of the employer to comply with the statutory requirements to examine his mine, mark the dangerous places and place danger signals is owed to those employed and generally instructed to make the mine safe as well as to other employees.

5. MINES AND MINERALS, § 176*—*when shown that dangerous*

*condition of roof had not been marked by mine examiner.* In an action by a mine employee to recover for injuries received by a fall of slate from the mine roof, evidence *held* to support a finding that the dangerous condition of the place had not been marked by the examiner.

6. MINES AND MINERALS, § 182*—*what are questions for jury in action for personal injuries sustained by miner.* In an action by a mine employee to recover for injuries received by a fall of slate, questions as to whether a dangerous condition existed at the place and whether plaintiff was injured thereby are for the jury.

Appeal from the Circuit Court of Marion county; the Hon. WIL-LIAM B. WRIGHT, Judge, presiding. Heard in this court at the March term, 1918. Affirmed. Opinion filed November 1, 1918.

NOLEMAN & SMITH, for appellant.

KAGY & VANDERVORT, for appellee; GEORGE D. LITTLE, of counsel.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

The appellee recovered a judgment against the appellant in the Circuit Court of Marion county, to reverse which this appeal is prosecuted.

It appears from the record in this case that the appellee was engaged at work for the appellant in room No. 4 of the 13th north entry of its coal mine near Sandoval, Illinois, and on the 18th of October, 1916, he was injured by reason of a fall of slate from the roof of the room near the face. This room had what is known as a "rock top," but between the coal and the rock there was about 8 inches of slate which was so rotten that it would not stand unless in some manner secured. The condition of the roof was known to the officers of appellant. The appellee had been engaged at work in this room for some time and was paid by the ton for removing the coal and by the hour for taking down and removing the slate and removing

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

such slate as fell. On October 17th the appellee had cleared up all of the former shot of coal except about one carload. He then drilled a hole and placed a shot in the face of his room and at the time he was about to quit work for the day fired the shot. The shot was not a perfect one but was what the miners term a "standing shot." Upon appellee's return to the room on the morning of the 18th he found this standing shot and as he had about one carload of coal upon the floor from a previous shot he proceeded to load the coal that was upon the floor and, after having done so, he went up near the face of his room and close to the standing coal to examine the roof and determine what to do, and while standing there looking at the roof the slate fell upon him and injured him. It further appears from the evidence that owing to this standing shot having released the pressure from the slate that this constituted a dangerous condition in this room, but the mine examiner had not marked it as such and no danger signals had been placed therein by the mine manager. When appellee came to work he was given his entrance check and went down into the room and, as he says, examined it, but found no danger marks of any kind and proceeded at his work in the usual manner.

The declaration consists of one count. This count, after averring the ownership and operation of the mine by the defendant, also alleged that the plaintiff was employed as a miner; that it was the duty of the defendant to inspect places where men were engaged to work and to observe whether there were any recent falls or dangerous obstructions in the room and working place of appellee, and if any places were discovered in which there were recent falls or dangerous obstructions to place a conspicuous mark or sign and to withhold the entrance check of those required to work therein. And then avers that a dangerous and unsafe condition existed in the roof and face of said

room, and that the defendant wilfully failed to mark the said place as dangerous and take possession of the entrance check of the plaintiff and withhold the same until the plaintiff was advised of the danger in said room, and that in consequence of such failure the plaintiff was injured by reason of a fall from the alleged dangerous condition. To this declaration the defendant filed the plea of general issue.

It is disclosed by the testimony in this case that on the afternoon before the injury to appellee that he had drilled and fired a shot in the face of his room at the time he left the mine for the day. The shot instead of being a perfect one was as the miners call it a "standing shot," that is, that the coal at the face was broken loose by the shot but left standing, and the coal would have to be mined or worked out with a pick on top of the coal. The slate between the coal and the rock in this room was very rotten and fell if left without support. The loosening of the coal by a standing shot would have a tendency to release the pressure against the slate and cause it to fall. Mr. Lewis, the superintendent of appellant's mine, says: "If the shot was a standing shot, as this happened to be, he would have to mine this coal, as we term it— make a cut or work the coal out with a pick on top of the coal, and as the mining advanced it took the support away from the slate, and the slate having no support, was bound to fall.  *  *  *  You would not have to mine the soft slate. It fell down. Sometimes it fell and sometimes you pulled it down. It proved dangerous to leave that overhanging in that mine. This slate fell if it was left without support. The shot sometimes would shoot the coal out and leave the slate hanging. It could not be much. It was so thick naturally it would not hang much unless it had support. It was bound to come down. It could not stand up. It would not stay up at all." Indeed, it is referred to by counsel as a dangerous place. They

say that: "The appellee knew, as every one else about the mine knew, that this room was a dangerous room, and that it was always a dangerous place after a shot had been fired, until such time as the strata of slate loosened by the shot had been taken down and the roof thereby made safe." It was not denied by appellant upon the trial in the Circuit Court, or in this court, that the conditions as they existed at the face of this room made it a dangerous place, and we think the jury were warranted in finding that a dangerous condition existed there at the time the mine examiner examined the room. He does not deny that such conditions existed. If such condition did exist it was the plain duty of the mine examiner to mark it as dangerous even though he thought there was no danger. "If the mine is in a dangerous condition, and the owner or operator has failed, with knowledge of its condition, to comply with the statute, he is liable, and he cannot excuse himself on the ground that he had the mine examined and in good faith thought it was not dangerous. His liability does not rest upon the ground that in good faith or bad faith he thought there was no danger in the mine, but upon the ground that he has, knowing the facts which made the mine dangerous, failed to have the statutory marks properly placed in the mine. When the mine owner or operator is advised of the conditions in the mine, he must place in the mine, if it is dangerous, the statutory marks, and if he fails to do so he acts at his peril, and he cannot excuse himself because he or his examiner or manager may think the mine safe." *Aetitus v. Spring Valley Coal Co.*, 246 Ill. 39. It is contended by counsel for appellant that it was not the duty of the mine examiner to mark or the mine manager to place danger signals at this place for the reason that the appellee was at work for appellant in a dual capacity, to wit, that of a miner and was also employed to remove the slate from the roof and

coal, and was thereby engaged in making a dangerous place safe, and this is the principal question argued by appellant. It is true that the evidence tends to show that appellee was paid by the hour for removing slate from the roof and such as may have fallen therefrom. We think the jury were warranted in finding that appellee was not engaged in the work of removing the roof at the time of the fall or in making a dangerous place safe. He had loaded up a carload of coal from several feet in front of the face; had just completed this work and then walked near the face of the coal to examine the roof when the slate fell and injured him. He says he had not struck a lick or done anything to the roof, slate or the standing coal. If the place had been marked as dangerous this might have been some aid to appellee in avoiding the danger. Whether the appellee was engaged in the work of removing the slate from the roof or in his work as a miner he was entitled to have the benefit of the knowledge and experience of the licensed mine examiner as to the safety of the place. If it had been marked as dangerous he would probably not have gone under the dangerous roof to have examined it. "If it had been marked dangerous he would probably not have given up the effort to get it down and gone under it to work and would not have been hurt." *Piazzi v. Kerens-Donnewald Coal Co.,* 262 Ill. 35.

We believe, however, that whether the appellee was engaged at his work as a miner or was engaged in taking down the slate from the roof under his employment by the hour, it was the duty of appellant to mark the place as dangerous, and its failure so to do in either case, if such was the cause of the injury, would make the appellant liable for the results. The Supreme Court in discussing the question as to how the operator of a mine may relieve itself from liability says: "The conditions under which a miner

may work at a dangerous place at his own risk are where the owner has complied with the law by having the mine examined, the dangerous place has been marked by the mine examiner, and the miner is sent to that place, by the direction of the mine manager, to make safe the particular dangerous conditions there existing." *Piazzi v. Kerens-Donnewald Coal Co., supra.* We do not understand that the statute as construed by the courts relieves the operator from marking a dangerous condition that exists in its mine as such, but, when such places are so marked, then the operator may send a servant to that place to work and make the dangerous place safe without incurring liability while such work is being performed. Counsel for appellant lay much stress upon the decision of the Supreme Court in the case of *Kellyville Coal Co. v. Bruzas,* 223 Ill. 595. We do not understand that this goes to the extent of relieving the operator from the marking of dangerous conditions, as provided by statute; indeed, the court in this opinion says: "If the examiner had failed to use reasonable diligence to discover the dangers in the entry in question or had not placed his danger signal there, or if the mine manager or his assistant had recklessly ordered the deceased into the place of danger without proper warning, the defendant could have been properly held liable; but here the gravamen of the defendant's offense is that the mine manager did not personally accompany the deceased and specifically direct the work." The question that was determined in the *Bruzas* case, *supra,* was that the mine manager did not personally have to accompany the servant in his work at a dangerous place where the place had been marked as such. The court in the case of *Piazzi v. Kerens-Donnewald Coal Co., supra,* in distinguishing that from the *Bruzas* case, *supra,* emphasizes the fact that the declaration in that case counted upon the wilful ordering of the deceased to work at a dangerous

place without the mine manager being present to direct the work. Even if it were the duty of the miner to clean up, take down and make the room safe, and that he had been directed in a general way to do so, such instructions did not relieve the owner from the duty of having the mine examined, the mine examiner from the duty of marking dangerous places or the mine manager from the duty of having danger signals placed. *Piazzi v. Kerens-Donnewald Coal Co., supra.*

It appears to us that it follows from these discussions upon this statute that whether the appellee was employed generally to make dangerous places safe in his room and was engaged at such work, or was pursuing his usual duties as a miner and was injured by reason of a dangerous condition in his room that had not been marked as such, as required by statute, that in either case the appellant would be liable for such injury. It is said by counsel for appellant that there is no evidence of a failure to mark the place. Appellee in his testimony says that he looked for marks or signs of danger but did not see any. The mine examiner or any one else in behalf of appellant does not claim that it was marked, nor is this testimony in any manner disputed by the witnesses of appellant. It seems to us that under such conditions this was sufficient to warrant the jury in finding that the place was not marked.

The questions as to whether or not a dangerous condition existed at this place and as to whether or not the appellee was injured by reason of such dangerous conditions were questions of fact for the jury.

It is also said by counsel for appellant that the jury did not follow the law as given to it by the court in its fourth instruction. We have examined the instruction referred to and believe that the court was very liberal to the defendant in this instruction as to the marking of a dangerous condition, as will be seen from what has been herein above set forth.

We are of the opinion that under the evidence in this case the jury were warranted in finding that a dangerous condition existed, and that the appellant failed to mark the same as such, and that the injury resulted from such failure. We do not find that the court committed any reversible error in its proceeding in this case, and we are of the opinion that the judgment should be and is affirmed.

*Judgment affirmed.*