**STATE of Iowa, Appellee,**

v.

**Otis C. (only) WEBB, Appellant.**

**No. 52289.**

Supreme Court of Iowa.

Feb. 6, 1968.

Rehearing Denied April 9, 1968.

Martin R. Dunn, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., William A. Claerhout, Asst. Atty. Gen., Ray A. Fenton, County Atty., and Vincent M. Hanrahan, Asst. County Atty., for appellee.

SNELL, Justice.

Defendant has appealed following conviction and judgment under "Chapter 169, Section 7, Subsection 2, of the Acts of the 61st General Assembly of the State of Iowa, 1965" now appearing as part of chapter 155 of our Code relating to pharmacists and wholesale druggists.

Defendant is a licensed pharmacist in the State of Iowa. At the time of the alleged offense he was employed at Strait Pharmacy in Des Moines.

There was uncontradicted testimony that on or about February 2, 1966 defendant sold a quantity of amphetamine sulfate pills, a prescription drug, to Bill Griffiths without a prescription. Bill Griffiths, describing himself as a "bad guy", was a former "dope addict" and a long time customer of defendant. The purchase was made with $50 in marked $10 bills furnished by the police. Defendant was arrested within a few minutes after the sale. The pills and money were traced and identified. Further review of the evidence is unnecessary. There is no issue before us as to the sufficiency of the evidence of an act illegal under some statute. The issue is the availability of the cited statute to support a conviction here. We think it is not.

I. Chapter 155, Code of Iowa, is headed and relates to pharmacists and wholesale druggists. Section 155.20 provides:

"Restricted prescription drugs. No prescription drug may be sold at wholesale or brokerage for resale to other than licensed pharmacies nor shall any person licensed under this chapter sell or dispense any prescription drug to any person other than a licensed pharmacy or a physician without prescription."

Defendant is a licensed pharmacist and subject to the provisions of this section. None of the exceptions or exemptions appearing in sections 155.22, 155.23 and 155.25 would appear applicable to defendant.

In 1965 the 61st General Assembly enacted Senate File #285 amending and adding to chapter 155, Code of 1962. The law under which defendant was prosecuted was an addition to the chapter. It appears as chapter 169, section 7, subsection 2, Laws of the 61st General Assembly. With authorized editorial changes it now appears as section 155.30, 1966 Code of Iowa. The pertinent parts are as follows:

"Penalties. Any person who sells or offers for sale, gives away, or administers to another person any prescription drug shall be deemed guilty of violating the provisions of this subsection or any person who violates any provisions of section 155.29 and upon conviction thereof, shall be fined not more than one thousand dollars or be imprisoned in the county jail for not more than one year, or both. * * *

"Nothing in this section shall be construed to prevent a licensed practitioner of medi-

cine, dentistry, nursing, veterinary medicine, or pharmacy from such acts necessary in the ethical and legal performance of his profession."

Subsection 1 of section 7 of the Act, now section 155.29 of the Code, lists acts that are proscribed. They all relate to a person attempting to obtain drugs. None relates to defendant and he is not charged with violation thereof.

Nowhere in the statute under which defendant was prosecuted is there any specific reference to pharmacists except to exempt them from its operation when performing "acts necessary in the ethical and legal performance of his profession."

Without this exception a licensed practitioner would be in the same position as a dope peddler.

Neither need nor logical reason for a new statute to cover pharmacists appears. Their acts were covered by existing statutes.

No explanation as to the purpose or intended scope of the Act appears in connection with the "Bill for an Act" as introduced, the Act as passed or the Senate Journal. However, it does appear from a study of chapter 169, Laws of the 61st General Assembly that the purpose was to make illegal individual acts not otherwise proscribed, make unlicensed persons subject thereto and provide penalties therefor.

We note that the penalty for violation of section 155.20 of the Code is covered by section 155.27. The penalties set forth in the statute involved here are more severe, cover second and subsequent offenses, and the unauthorized sale, gift or administering of a prescription drug to a minor. We also note that the first part of the law, quoted, supra, refers to a violation of "this section" while the part referring to minors is more inclusive by using the words "this chapter."

II. While not strictly limited to prescribing penalties section 155.30 is basically and essentially a penalty statute.

Chapter 169, Laws of the 61st General Assembly as enacted contained 10 sections and numerous subsections.

Pursuant to section 14.13, Code of Iowa, the Code editor in preparation of the Code divided the sections "so as to give to distinct subject matters a section number but without changing the meaning." Descriptive headings were also provided for each section.

Although the headings are not a part of the law as enacted (see section 3.3, Code of Iowa) it is interesting to note that the statute involved here is entitled "Penalties."

If the statute before us is construed as applicable to all persons except those properly licensed and as providing penalties it is not vulnerable to defendant's attack. That it has a proper purpose, closes a loophole in the law and is workable appears without serious question. When applied to a situation such as we have here an entirely different problem is presented.

III. The last paragraph of section 155.-30 exempts from its operation a licensed pharmacist when performing "acts necessary in the ethical and legal performance of his profession."

While we view the sale of a large quantity of amphetamine sulfate pills without a prescription with a very jaundiced eye and certainly do not approve of what defendant is alleged to have done, we must consider the statute in its application to licensed practitioners generally rather than to defendant and the simple facts before us.

There is nothing in the record before us to indicate what is or is not necessary and both ethical and legal. Judges and courts should not be so naive as to pretend they do not know what everyone else knows. We are not suggesting that selling prescription drugs without a prescription is ethical. We are saying that as applied to licensed persons there is nothing in the record before us to indicate what is or is not ethical and legal. We do not know whether there is

such a thing as a code of ethics for pharmacists. If there is such a code we do not know what it provides. If applied to licensed persons the statute is too vague to be enforced. There is no ascertainable standard of guilt. We do not believe that the legislature intended the enactment of an unnecessary and useless law.

IV. There have been a host of court decisions involving the sufficiency of statutory definitions or designations and they are far from harmonious.

We exhaustively reviewed the authorities in State v. Coppes, 247 Iowa 1057, 78 N.W. 2d 10. Repetition here is unnecessary. A few statements therefrom and from International Harvester Co. v. Kentucky, 234 U. S. 216, 34 S.Ct. 853, 58 L.Ed. 1284, and Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 will suffice.

The International Harvester Company case involved a price fixing statute and a charge of selling above real value pursuant to agreement. The statute was held invalid. Mr. Justice Holmes, in concluding his opinion, said:

"To compel them to guess, on peril of indictment, what the community would have given for them if the continually changing conditions were other than they are, to an uncertain extent; to divine prophetically what the reaction of only partially determinate facts would be upon the imaginations and desires of purchasers, is to exact gifts that mankind does not possess."

The Connally case involved a statute requiring payment of wages " 'not less than the current rate of per diem wages in the locality where the work is performed.' " The court reviewed the various uncertainties and concluded:

"The result is that the application of the law depends, not upon a word of fixed meaning in itself, or one made definite by statutory or judicial definition, or by the context or other legitimate aid to its construction, but upon the probably varying impressions of juries as to whether given areas are or are not to be included within particular localities. The constitutional guaranty of due process cannot be allowed to rest upon a support so equivocal."

Our opinion in State v. Coppes, supra, involved the "reasonable and proper" speed restrictions in section 321.285, Code of Iowa. The statute was upheld against a constitutional attack. After extensive analysis this conclusion appears:

"The words of it are simple and their meaning well known to anyone having, or qualified to have, a motor-vehicle operating license. The section is sufficiently clear and specific to inform all motorists of what conduct on their part will subject them to the penalties of section 321.482 of the Iowa Code of 1954, I.C.A."

Preceding this conclusion these statements appear:

"The general rule respecting the sufficiency of the statement of statutory crimes— and there are no others in Iowa—is well expressed in Connally v. General Construction Co., 269 U.S. 385, 391–392, 46 S.Ct. 126, 127, 70 L.Ed. 322, towit: 'That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. International Harvester Co. [of America] v. [Commonwealth of] Kentucky, 234 U.S. 216, 221, 34 S.Ct. 853, 58 L.Ed. 1284, [1287]'.

" * * * 'It is axiomatic that statutes creating and defining crimes cannot be extended by intendment. Purely statutory offenses cannot be established by implication. There can be no constructive offenses. Be-

fore a man can be punished, his case must be plainly and unmistakably within a statute.' " (247 Iowa loc. cit. 1061 and 1062, 78 N.W. 2d)

On page 1081 of 274 Iowa, on page 14 of 78 N.W.2d, of State v. Coppes, supra, it is noted that the statute being considered was directed primarily to operators of motor vehicles on public highways. The statute had general application to all and operators "know or should know what speed is proper and reasonable under different traffic conditions."

With that statement we agree but it does not follow that it can be determined with reasonable certainty what is ethical in the practice of "medicine, dentistry, nursing, veterinary medicine, or pharmacy" in the absence of some standard or guide.

We repeat that we do not suggest what defendant is charged with doing could by any stretch of imagination be considered necessary, ethical and legal. However, we must construe the statute as it is written and not according to our reaction to the present situation.

■ We hold that the statute relied upon by the State is not a proper vehicle to support the charge made here. It is void for unworkability.

■ In our opinion it was never intended to cover the factual situation disclosed here.

V. Our conclusion that the statute is unworkable for the purpose sought by the State does not vitiate the statute when used where applicable. In Davidson Building Company v. Mulock, 212 Iowa 730, 756, 235 N.W. 45, this appears:

"Our holding that the aforesaid sections of Chapter 205, Acts 43d G. A., are void for unworkability, shall not be construed as affecting the validity of the remainder of said chapter, which is not under attack. It is a rule of universal application that a statute may be valid in part, and invalid in another part, and if the invalid part is severable from the remainder, the portion which is valid may stand while that which is void may be stricken out and rejected, if, after the elimination of the void portion, the remaining provisions are sufficient to be effective and accomplish their purpose in accordance with the legislative intent deducible from the act construed in the light of contemporary events."

VI. Discussion of other points raised by appellant is unnecessary.

Defendant was prosecuted and convicted under the wrong statute and the judgment entered cannot stand.

Defendant raised the issue at every possible opportunity by demurrer, motion to dismiss, timely renewal of the motion, and motion notwithstanding the verdict.

The case is reversed and remanded with instructions to enter an order of dismissal notwithstanding the verdict.

Reversed for entry of order of dismissal.

LARSON, MOORE, STUART, BECKER and LeGRAND, JJ., concur.

GARFIELD, C. J., and RAWLINGS and MASON, JJ., dissent.

MASON, Justice.

I dissent.

The parties make opposite contentions that the phrase, "legal and ethical performance of his profession" is and is not so vague that due process of law is violated.

In People v. Nunn, 46 Cal.2d 460, 296 P.2d 813, 817–818, certiorari denied and appeal dismissed, 352 U.S. 883, 77 S.Ct. 126, 1 L.Ed.2d 82, the defendant, a physician, was convicted of prescribing narcotics for a person not under his treatment for a pathology and prescribing a narcotic for a person who represented himself to be an

addict. The statute prohibited prescribing narcotics to or for a person not under treatment for a pathology or condition other than a narcotic condition—"except in the regular practice of his profession."

On appeal defendant contended: "That section 11163 of the Health and Safety Code is unconstitutional because the term 'except in the regular practice of his profession' is too vague, indefinite and uncertain to give notice of what constitutes the act sought to be prohibited."

In holding the contention to be without merit the court said, " * * * To comply with the constitutional requirement of due process of law, the crime for which defendant is being prosecuted must be clearly defined, but it is only necessary that the words used in the statute be well enough known *to enable those within its purview to understand and correctly apply them.* * * * "

" * * *

" * * * Thus the 'regular practice of his profession' is a term clearly to be understood from the statutes, and it is well enough known to enable a person practicing as a physician and surgeon to understand and apply it. * * * " (Emphasis added)

In McKenzie v. State, Tex.Cr., 383 S.W. 2d 177, 180, the court upheld a statute proscribing delivery of dangerous drugs by a practitioner except "in the course of his practice." Defendant insisted the section was so indefinite as to render the statute void and wholly inoperative because it did not define the phrase "in the course of his practice."

Relying on the earlier Texas case of King v. State, 166 Tex.Cr.R. 231, 312 S.W. 2d 501, the court held the statute was not subject to the objection of indefiniteness as urged by defendant.

In Marks v. Frantz, 179 Kan. 638, 298 P.2d 316, 322, a statute proscribing practice of optometry "in any unethical manner" was upheld as against the contention that the statute was unconstitutional on the ground that it failed to fix any standard or define with any clarity and exactness the term "unethical manner."

Looking at section 155.30, everyone is prohibited from selling prescription drugs but the general proscription is later made inapplicable to certain professional people, one of whom is a pharmacist. They are exempted from proscription only for sale of prescription drugs when such sale is necessary in the ethical and legal performance of their profession, they should be held accountable for knowledge of the ethics of their own profession. As to what he may legally do in the performance of his profession may not be completely known to him, but by virtue of Code section 155.20's long standing he knew or should have known he is not to sell prescription drugs to persons not bearing a prescription.

"A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part, or section so as to produce a harmonious whole. Thus it is not proper to confine interpretation to the one section to be construed." Sutherland, Third Ed., (by Horack), Statutory Construction, section 4703. See also 16A C.J.S. Constitutional Law § 580 and Connally v. General Construction Co., 269 U.S. 385, 391–392, 46 S.Ct. 126, 127, 70 L.Ed. 322.

I would affirm.

GARFIELD, C. J., and RAWLINGS, J., join in this dissent.