**HUESKE IMPLEMENT COMPANY, Inc.,**
**Appellant (Plaintiff below),**

v.

**James L. SHIPLEY, Appellee**
**(Defendant below).**

**No. 3676.**

Supreme Court of Wyoming.

Sept. 10, 1968.

David A. Scott, of Murane, Bostwick, McDaniel & Scott, Casper, for appellant.

J. T. Langdon, Worland, for appellee.

Before HARNSBERGER, C. J., and GRAY, McINTYRE, and PARKER, JJ.

Mr. Justice GRAY delivered the opinion of the court.

Plaintiff, Hueske Implement Company, Inc., brought an action against the defendant, James L. Shipley, to recover damages

claimed to have been inflicted upon plaintiff's 1956 Beechcraft G-35 Bonanza aircraft as the result of a collision between it while parked on a parking ramp at an airport in North Platte, Nebraska, and a B-26 aircraft negligently being taxied by the defendant.

The pretrial order recites, among other things, that plaintiff's claim of negligence on the part of the defendant was based upon defendant's failure to keep a proper lookout and that defendant, although admitting the time and place of the accident, denied such claim. In addition the defendant interjected the following affirmative defense:

" * * * Defendant further claims that at all times herein, he was maneuvering his airplane under the direction of the F.A.A. Flight Service Station in North Platte, Nebraska. That he was in direct contact with the Flight Advisory and that he was given authority by said Flight Advisory to taxi his plane. * * * Defendant, therefore, contends that the collision was the result of the negligence of the personnel of the F.A.A., * * * and that defendant either taxied into this airplane pursuant to instructions or the suction created by defendant's propellers caused plaintiff's plane to move into the right propeller."

Following trial of the case the trial judge, sitting without a jury, entered judgment for the defendant. In support of the judgment the trial court found generally for the defendant; that defendant was not negligent; and with respect to defendant's affirmative defense made the following special finding:

" * * * That the time complained of, Defendant was maneuvering his plane *under the direction* of the Flight Service Station at North Platte, Nebraska, and that the taxiing of said aircraft was pursuant to these *directions. * * * *"* (Emphasis supplied.)

Plaintiff has appealed, claiming in substance that the trial court erred as a matter of law in finding that the defendant was not negligent when he taxied his plane into plaintiff's aircraft. From our review of the record we are persuaded that the trial court in disposing of the case adopted the theory of defendant and in this we think the trial court was under some misapprehension as to the responsibilities of the defendant and the functions of a flight service station and the duties of its personnel. For such reason we have concluded that the judgment must be reversed and the case remanded for new trial. We will therefore confine our consideration as much as possible to the facts and the law pertinent thereto.

Unfortunately the sketch depicting the physical layout of the airport and the initial location of both parties' aircraft placed upon the blackboard during trial was not preserved and we have encountered some difficulty in reconstructing the sketch. Generally speaking, however, there is little dispute that the airport was owned and operated by the City of North Platte. The administration building in which the F.S.S. was housed at ground level faced to the south and adjoined on the north what was identified as a concrete-surfaced "parking ramp" and "loading ramp" which measured approximately 300 feet by 350–400 feet. Adjoining this ramp on the south approximately at the center was a "taxi ramp" leading south to the runways. This was not a "tower-controlled" airport.

The Bonanza was parked in the southwest corner of the parking ramp approximately 35 feet from the west edge of the concrete. Sometime prior to the time the Bonanza was parked the defendant had parked the B-26 upon the parking ramp, but because of congestion he was requested to move it. By whom is not clear. Nevertheless, just prior to the accident the B-26 was parked on the "sod" facing east some 65 feet almost directly behind the Bonanza. According to the testimony of the defendant the B-26 was so constructed and equipped that his vision, particularly to the right, was limited and he could not see the Bonanza after entering the B-26. His counsel emphasizes such fact and says the defendant "was dependent upon *ground help* for ma-

neuvering this aircraft." (Emphasis supplied.)

For several days prior to the accident the B-26 was being used for "slurry bombing" a fire in the Halsey Forest and defendant had been flying in and out of the airport during that time. On the day of the accident the B-26 was loaded with slurry, which was no longer needed, and the material being corrosive the defendant had gone to the airport for the purpose of obtaining permission from the airport manager to dump the slurry in an area near the south end of the airport. Although such permission had not been granted at the time of the collision, it is the testimony of the defendant that he entered the B-26 sometime between 3:45 or 3:50 p.m. and just before doing so had observed the parked Bonanza. Upon entering the plane the defendant made contact by radio with the F.S.S., requesting an "advisory" for purposes of taking off, and began warming up the engines. Some ten minutes after receipt of the "advisory" the defendant, as the pilot and lone occupant of the B-26, started to maneuver it in order to get upon the parking ramp and it was during such maneuver that the accident occurred.

■ The critical question here is whether such "maneuvering" was done "under the *direction* of the F.S.S.," as the trial court found. The answer lies in the status and purpose of an "advisory." As an experienced and licensed pilot, the defendant is charged with knowledge of the safety rules and regulations of the F.A.A. applicable to a flight service station and will not be heard to assert to the contrary. Severs v. Abrahamson, 255 Iowa 979, 124 N.W.2d 150, 152; Marshall Produce Company v. St. Paul Fire and Marine Insurance Company, 256 Minn. 404, 98 N.W.2d 280, 291. In this respect it no doubt would have been most helpful to the trial court had counsel for either of the parties furnished copies of such rules and regulations lawfully adopted by the F.A.A. and published in the Federal Register, and which under the rationale of Logan v. Pacific Intermountain Express Company, Wyo., 400 P.2d 488, 492, would form a part of the

law of the case of which the courts take judicial notice. See 44 U.S.C.A. § 307 (1967 Cum.Supp.), Lange v. Nelson-Ryan Flight Service, Inc., 259 Minn. 460, 108 N.W.2d 428, 432; Brandes v. Mitterling, 67 Ariz. 349, 196 P.2d 464, 467; and see Sims v. Southern Bell Telephone & Telegraph Company, 111 Ga.App. 363, 141 S.E.2d 788, 789; Morrison v. Hutchins, 158 Kan. 123, 144 P.2d 922, 924; Severs v. Abrahamson, supra, 124 N.W.2d at 151; Lilly v. Grand Truck Western R. Co., 317 U.S. 481, 63 S. Ct. 347, 352, 87 L.Ed. 411. Whether, under the circumstances here, we would be warranted in giving effect to such rules and regulations we need not decide. Plaintiff's witness Chester A. Bruner, without objection, testified as to the scope and effect of an advisory rendered by a flight service station.

Bruner said that he had been in charge of the F.S.S. at North Platte from June 1942 and was on duty on May 14, 1965, at the time of the accident. He said that on request the station furnished "advisories" consisting of landing information; any known traffic in the vicinity; weather information; wind; altimeter settings; the runway normally in use, but did not advise the pilot to use any particular runway; any help that a pilot might request; and emphasized that the personnel were not empowered to give directions or instructions, only information. The same information was given to pilots on takeoff, including where a pilot "normally should taxi, and any incoming or outgoing traffic that we knew of." When asked if it was fair to say that they would give information which might affect the traffic of the airport rather than to say that they "controlled the traffic at the airport," he said, "That is right" and then repeated, "We were not allowed to give instructions, only information. It is the pilot's prerogative that [at] all times to utilize his judgment in landing or taking off or taxi. We could not direct him to do anything other than just general information."

The defendant, when called by plaintiff under Rule 43(b), W.R.C.P., gave testimony substantially in keeping with Bruner's

testimony and more than once stated that what he had obtained from the personnel of the F.S.S. just prior to the "maneuvering" of the B-26 was "information." At no time did he say that he asked for or received a "direction" as to how he was to maneuver his plane to get it upon the parking ramp, and in this connection his testimony as to the information received as it related to the taxiing of the B-26 was vague and ambiguous. According to his testimony, "they give me the runway information and surface wind and taxi by the ramp and I called back and asked him to say again and he repeated this information and I started to taxi." When asked if he was referring to the "taxi ramp," and this was important because two ramps were involved, he replied, "Taxi by the ramp and taxi runway three zero." Later, when testifying on his own behalf, he said that each time he landed or took off at the North Platte airport he called the F.S.S. and asked for an "advisory." He also said that on takeoff the advisory would include "the runway and how to taxi to the runway."

In law there is a distinction between a "direction" and an "advisory." The word "direction" is of common usage and understanding. It means "something that is imposed as authoritative instruction"; "an explicit instruction: ORDER, COMMAND." Webster's Third New International Dictionary, Unabridged, page 640 (G. & C. Mirriam Co., Publishers, 1961). It has been said to be "the act of governing, ordering, or ruling," Kellyville Coal Co. v. Bruzas, 223 Ill. 595, 79 N.E. 309, 311. Also, that it is "a guiding or authoritative instruction," Way v. Patton, 195 Or. 36, 241 P.2d 895, 900. The party charged with issuing a "direction" assumes such "control and custody" over the subject matter that he directs "the manner" in which the undertaking is to be accomplished. Blackwood v. Chemical Corn Exchange Bank, 4 A.D.2d 656, 168 N.Y.S.2d 335, 338, reargument and appeal denied 5 A.D.2d 768, 170 N.Y.S.2d 504, appeal dismissed 4 N.Y.2d 802, 173 N.Y.S.2d 33, 149 N.E.2d 532.

An "advisory" on the other hand is "a report giving information (as one issued by a weather bureau on the progress of a hurricane)." Webster's Third New International Dictionary, supra, at page 32.

In McGraw v. Marion County Plan Commission, 131 Ind.App. 686, 174 N.E.2d 757, 760, it is said:

"* * * The word 'advisory' means: 'Counselling, suggesting, or advising, but not imperative or conclusive.' Black's Law Dictionary (Fourth Edition). * *"

The following comment of the New Mexico Supreme Court in Hughes v. Van Bruggen, 44 N.M. 534, 105 P.2d 494, 496–497, is also helpful:

"Plaintiff confuses the word 'advice' with the word 'instruction'. There is a distinction between the two words. 'Advice' means legal counsel. *Instructions* and *Directions* are synonymous. (See English's Law Dictionary.) To 'instruct' carries an implication that it is to be obeyed, while 'advice' means it is optional with the person addressed whether he will act on such advice or not. See State v. Downing, 23 Idaho 540, 130 P. 461."

■ In the foregoing we have not overlooked the fact that the defendant, under guidance by his counsel, equivocally transformed that part of the advisory furnishing "information" on taxiing to an "instruction" but in view of what has been said it is highly improbable that defendant was not fully cognizant of the nature of the service rendered by a flight service station as described by the witness Bruner, and while such transformation apparently was sufficient to mislead the trial court it was not sufficiently substantial reasonably to support its special finding. Steadman v. Topham, 80 Wyo. 63, 338 P.2d 820, 825; In re Stringer's Estate, 80 Wyo. 389, 343 P.2d 508, 518, 345 P.2d 786.

■ Even accepting defendant's testimony that he interpreted the words of the information "taxi by the ramp three zero" to mean that the area ahead of him would be clear, that, of itself, could not shift all

responsibility for the maneuver to the F.S.S. It is well established that even in a "tower-controlled" airport the pilot of an aircraft has the primary responsibility for the operation and movement of his aircraft. Hartz v. United States, 5 Cir., 387 F.2d 870, 873; United States v. Hedburg, D.C.S.Dak., 217 F.Supp. 711, 713; Somlo v. United States, D.C.Ill., 274 F.Supp. 827, 841; and where an "instruction" and clearance for takeoff has been given by "tower" personnel that would endanger safe operation of an aircraft because of existing circumstances of which the pilot is aware, such instruction is not to be followed blindly. Tilley v. United States, 4 Cir., 375 F.2d 678, 681, 683. See also Somlo case, supra, 274 F.Supp. at p. 839.

The judgment is reversed and the case remanded for new trial.