Robert McLEAN, Petitioner,

v.

STATE of Tennessee, Respondent.

Supreme Court of Tennessee.

Aug. 25, 1975.

---

2. *S. C. Weber Iron & Steel Company v. Jeffery, supra,* involved toe injuries and loss of use of the foot.

William S. Todd, Kingsport, for petitioner.

Tom Jennings, Asst. Atty. Gen., for respondent; R. A. Ashley, Jr., Atty. Gen., Nashville, of counsel.

## OPINION

HARBISON, Justice.

Petitioner, Robert McLean, was convicted in the Criminal Court of Sullivan County, Tennessee on two charges of selling legend drugs, the sales having allegedly occurred on October 23, and November 2, 1972. He received in each case a fine of $500 and a sentence of confinement in the county jail of eleven months, twenty-nine days. These convictions were based upon violations of T.C.A. § 52–1204. Petitioner was simultaneously indicted, tried and convicted for selling a controlled substance in violation of T.C.A. § 52–1432(a) for which he was fined $1000 and sentenced to serve three years in the state penitentiary. All of the sentences were ordered to run consecutively.

Petitioner appealed his convictions to the Court of Criminal Appeals. In a divided decision, the Court of Criminal Appeals affirmed one conviction of the petitioner for selling a legend drug and affirmed the conviction for selling a controlled substance; however, it dismissed the second charge of selling a legend drug, upon the ground that this had occurred in one and the same transaction as the sale of the controlled substance.

■ Petitioner filed a petition for certiorari in this Court, which was granted. The State did not file a petition for certiorari from the action of the Court of Criminal Appeals in dismissing one of the legend drug charges, nor did it assign error after the Court had granted the petition filed on behalf of McLean, as it might have done. T.C.A. § 27–823. Accordingly, the judgment of the Court of Criminal Appeals dismissing one of the legend drug charges has become final and is not before us.

In addition to the two legend drug indictments, petitioner was indicted upon charges of feloniously selling and feloniously possessing with intent to sell a controlled substance, barbiturate derivative, this sale having occurred on November 2, 1972. The indictment does not list the schedule of the Tennessee Drug Control Act for which violation was claimed, but in his instructions to the jury the trial court charged that the controlled substance was classified under Schedule III (T.C.A. § 52–1417), and he instructed the jury as to the penalty for violation of this schedule, being not less than three nor more than eight years imprisonment and a fine of not more than $10,000. T.C.A. § 52–1432(a)(1)(C).

■ The facts of the case were sharply disputed. It is uncontroverted, however, that petitioner was a licensed, registered pharmacist, working at certain pharmacies in Kingsport, Tennessee.

By preliminary motion petitioner challenged the constitutionality of the statute

governing the sale of legend drugs, T.C.A. § 52–1204. His motion to quash the indictment was overruled, and he continued to assert the alleged unconstitutionality of this statute in the Court of Criminal Appeals, which sustained the statute as against charges that it was unconstitutionally vague and indefinite and that there was an unlawful delegation of legislative power in referring to federal law for a definition of legend drugs. Agreeing with the Court of Criminal Appeals that the statute did not contain any constitutional infirmity, we limited our grant of certiorari to the other issues now before us.

Petitioner made no attack whatever upon the indictment for the sale of the controlled substance, and did not raise any question as to whether the provisions of T.C.A. § 52–1432(a) were or were not applicable to licensed, registered pharmacists. This question was raised for the first time in the dissenting opinion filed in the Court of Criminal Appeals, and this Court granted certiorari for the purpose of examining the subject. It is our opinion that the provisions of T.C.A. § 52–1432(a), generally prohibiting the sale or possession with intent to sell controlled substances, are not applicable to registered pharmacists, such as the petitioner, and that the petitioner accordingly was indicted, tried and convicted under an inapplicable statute.

T.C.A. § 52–1432 generally forbids any person to manufacture, deliver, sell or possess controlled substances as listed in the various schedules of the 1971 Drug Control Act, codified under previous code sections. It also forbids any person to possess these substances with intent to manufacture, deliver or sell and prescribes various penalties, including separate and differing penalties respecting drugs classified under the different schedules. At its beginning, however, this section specifically states that its prohibition apply to all sales, deliveries, etc. "except as authorized" by other portions of the 1971 Drug Control Act (the entire Act being codified as T.C.A. §§ 52–1408—1448).

T.C.A. §§ 52–1424 through 1431 make specific provisions for pharmacists and professional persons licensed by the various boards dealing with the healing arts. T.C.A. § 52–1424 provides as follows:

"The board of pharmacy and the appropriate occupational or professional licensing board governing persons who may legally dispense controlled substances may promulgate rules and charge reasonable fees relating to the registration and control of the manufacture, distribution and dispensing of controlled substances within this state.".

The next section provides that every person who manufactures, distributes or dispenses any controlled substance within the state or who proposes to engage in the manufacture, distribution or dispensing of such substances, must obtain annually a registration issued by the Board of Pharmacy and the appropriate occupational or professional licensing board. T.C.A. § 52–1425(b), insofar as here pertinent, provides:

"Persons registered by the board of pharmacy . . . may possess, manufacture, distribute or dispense those substances to the extent authorized by their registration and in conformity with the other provisions of this section."

Subsection (e) of the same section provides that a separate registration is required at each principal place of business or professional practice where an applicant manufactures, distributes, or dispenses controlled substances.

Of course, the practice of pharmacy and the licensure of the members of that profession are defined and dealt with in detail by separate statutes, T.C.A. § 63–1001 et seq. The Drug Control Act, in its definition section expressly refers to a "pharmacist" as being a person duly licensed by state law. T.C.A. § 52–1409(y).

There is no issue in the present case but that the petitioner was duly licensed, and there is no claim that he had failed to comply with any of the registration stat-

utes, entitling him to possess and dispense controlled substances as a pharmacist.

Subsequent sections of the Drug Control Act deal with criteria for the issuance of registration to pharmacists, physicians and other licensed persons, for the suspension and revocation of their registration, for the keeping of various records and inventories, and for distribution among registrants. T.C.A. § 52–1431 deals generally with prescription requirements, and subsection (c) of that section is as follows:

"Except when dispensed directly by a practitioner, other than a pharmacy, to an ultimate user, a controlled substance included in schedule III or IV, which is a prescription drug as determined under chapter 13 of this title, shall not be dispensed without a written or oral prescription of a practitioner. The prescription shall not be filled or refilled more than six (6) months after the date thereof or be refilled more than five (5) times, unless renewed by the practitioner."

Other portions of T.C.A. § 52–1431 deal with the dispensing of drugs under Schedules II and V.

There seems to be no question on this record but that the petitioner was at all pertinent times subject to the terms and provisions of T.C.A. §§ 52–1424 through 54–1431.

Portions of the 1971 Drug Control Law contain specific penalties for registrants. T.C.A. § 52–1435(a) expressly makes it unlawful for any person who is subject to T.C.A. §§ 52–1424 through 52–1431 to distribute or dispense a controlled substance in violation of § 52–1431 (insofar as here pertinent, selling a controlled substance without a prescription from a practitioner). Subsection (b) of T.C.A. § 52–1435 expressly provides as follows:

"Any person who violates this section is guilty of a felony and upon conviction may be imprisoned for not less than two (2) years nor more than ten (10) years, or fined not more than twenty thousand dollars ($20,000), or both."

It seems clear to us that the petitioner should properly have been indicted and tried for violation of T.C.A. § 52–1431, and sentenced according to T.C.A. § 52–1435. The statute under which he was indicted and convicted pertains to the public generally, but the code sections last cited deal specifically with pharmacists and other registrants, and prescribe entirely different penalties and sanctions from those pertaining to the general public.

It accordingly appears to us that the petitioner, respecting the controlled substance charge against him, was tried and convicted under an inappropriate statute, and his conviction for violation of T.C.A. § 52–1432(a) cannot stand.

A somewhat similar case was presented to the Supreme Court of Iowa in the case of *State v. Webb*, 261 Iowa 1151, 156 N.W.2d 299 (1968). The defendant there was a licensed pharmacist and allegedly made sales of certain prescription drugs without a prescription.

Certain statutes of the state prohibited pharmacists from making such sales without a prescription and provided specific criminal penalties therefor. A new general drug control act, however, contained a general prohibition against the sale of prescription drugs, and provided separate and different penalties. The latter statute contained an express provision that nothing contained in it should be construed to prevent a licensed pharmacist or other professional person from performing necessary acts in the ethical and legal performance of his profession.

The defendant was indicted under the general statute, rather than under the statute pertaining to pharmacists.

Reversing a conviction of the defendant, the Supreme Court of Iowa held that the general statute, pertaining to members of the public at large, was not applicable to pharmacists, and if applied to pharmacists, or other licensed persons, the statute was simply too vague to be enforced. The Court stated:

"While we view the sale of a large quantity of amphetamine sulfate pills without a prescription with a very jaundiced eye and certainly do not approve of what defendant is alleged to have done, we must consider the statute in its application to licensed practitioners generally rather than to defendant and to the simple facts before us." 156 N.W.2d at 301.

The Court concluded that the statute under which the defendant had been convicted was "not a proper vehicle to support the charge made here." The Court held that the general statute was not intended to apply to sales made by a licensed pharmacist, and that an attempt to apply it in such cases created an untenable ambiguity and uncertainty in the general law.

A similar situation is encountered in the present case if the general statute, applying to the public at large, is also attempted to be made applicable to pharmacists, physicians and other persons described in the Drug Control Act as "registrants". The general statutes prohibit possession, sales, manufacture and distribution of controlled substances and provide a series of criminal penalties therefor, "except as authorized" by other code sections. Specific authorization for possession and dispensing of controlled substances is granted to pharmacists and other registrants by T.C.A. §§ 52–1424 through 52–1431, under the conditions specified therein and subject to the prohibitions therein contained. We believe that uncertainties and ambiguities of an undesirable nature would be created if the general prohibitions of T.C.A. § 52–1432 were made applicable to pharmacists and other registrants.

Like the Iowa court, we in no way sanction the conduct with which the petitioner is charged in the present case, but we cannot escape the conclusion that he should have been indicted and tried for violation of T.C.A. § 52–1431(c), and, if convicted, punished as provided in T.C.A. § 52–1435.

On behalf of the State it is urged that the evidence offered at the trial was sufficient to convict the petitioner of a violation of T.C.A. § 52–1431, that is of selling a controlled substance falling within Schedule III without a prescription. It is therefore argued that there has been an error made simply as to the degree of punishment, and we are urged to reverse the case and remand it for a new trial on punishment only. While this might be permissible under some circumstances, we do not believe it appropriate where the petitioner has been indicted and tried under an inapplicable statute. It seems to us that there has been such a material variance between the offense charged and that attempted to be shown in evidence as to void the conviction.

As stated in a dissenting opinion by Judge Wayne Oliver in the case of *Nunley v. State*, 479 S.W.2d 836, 840. (Tenn.Cr.App. 1972):

"Nothing is more firmly established in the law than that a defendant cannot be charged with one crime and convicted of another."

Cited in support of this statement is the case of *Brown v. State*, 162 Tenn. 639, 39 S.W.2d 746 (1931).

In the latter case, the defendant was indicted upon a charge of fraudulent appropriation of property. The Supreme Court concluded that the evidence showed that the defendant had authority to sell the property, and that he had fraudulently appropriated the proceeds of the sale, rather than the property itself. Reversing the conviction, the Court said:

"Plaintiff in error cannot be adjudged guilty of a fraudulent appropriation of the proceeds of the property upon an indictment charging him with a fraudulent appropriation of the property itself." 162 Tenn. at 642, 39 S.W.2d at 747.

In the case of *Hayes v. State*, 145 Tenn. 629, 237 S.W. 1104 (1921), the defendant had been indicted for possessing intoxicating liquors received directly or indirectly from a carrier. There was evidence that the petitioner was actually in possession of

intoxicating liquors, but no proof whatever that he had received it from a carrier.

In reversing the conviction, the Court said:

"The evidence is not sufficient to sustain the conviction upon this indictment. Defendant might have manufactured the whisky himself or he might have personally transported it to his residence. He is not charged with either of these offenses, and he cannot be convicted for an offense with which he is not charged." 145 Tenn. at 631, 237 S.W. at 1105.

■ It is further argued on behalf of the State that the offense of selling a controlled substance, as prohibited by T.C.A. § 52–1432(a), is a "lesser included offense" to the sale of a controlled substance by a pharmacist without a prescription. An examination of the statutes, however, convinces us to the contrary. As already pointed out, the penalty provided for unlawful possession or sale of a Schedule III substance by a member of the public generally is a prison term of three to eight years; it is difficult for us to see how this offense can be said to be included in the offense of sale by a pharmacist without a prescription, where the prison term is fixed at from two to ten years. The fines authorized to be imposed upon conviction of the two offenses likewise vary greatly; under the general statute a fine of up to $10,000 is authorized, while in the case of a registrant a fine of up to $20,000 is authorized. We further note that in T.C.A. § 52–1436 other and special penalties are prescribed for violations by registrants not here pertinent, and an examination of the entire Drug Control Act convinces us that it was the legislative intent that registrants be indicted and tried under the specific provisions of the Act applicable to them, and not under the general provisions.

■ As previously pointed out, petitioner did not attack the legal sufficiency of the indictment against him insofar as the controlled substance charge was concerned, and the question has been raised on his behalf for the first time in his petition for certiorari to this Court, after having been suggested by the dissenting opinion in the Court of Criminal Appeals.

A number of statutory provisions in this State govern the form and sufficiency of indictments, T.C.A. §§ 40–1801 through 40–1828, and it is clear under our cases that most formal defects in indictments and in the procedures surrounding them may be waived by an accused, who pleads not guilty and goes to trial on the merits. A material variance, between the offense charged and the evidence offered, however, normally is not waived. Even though the evidence establishes guilt of some offense, the conviction cannot stand if that offense is not one covered by the indictment. See 4 *Wharton's Criminal Law and Procedure*, § 1887 (Anderson 1957); see also 5 *Id.* § 2060.

■ We note that in T.C.A. § 52–1444 of the Drug Control Act, there are express provisions that the State is not required to negate any exemption or exception from the provisions of the Act in any complaint, information, indictment or pleading, or in any trial or other proceeding under the Act. The statute expressly provides that the burden of proof of any exemption or exception is upon the person claiming it. The statute further provides that in the absence of proof that a person is the duly authorized holder of an appropriate registration or order form, he is presumed not to be the holder of the registration or form, and the burden of proof is upon him to rebut the presumption.

These provisions were undoubtedly designed to eliminate many of the technical problems which have existed in the preparation of indictments for statutory violations, where the statutes themselves create various exemptions or exceptions. See *Villines v. State*, 96 Tenn. 141, 33 S.W. 922 (1896).

Nevertheless, since it was uncontroverted at the trial that the petitioner was a duly

licensed and registered pharmacist, and he was so referred to repeatedly throughout the proof, we believe that he has sufficiently shown himself to be within the exceptions to the general law and within the specific provisions pertaining to registrants, that his conviction under the general law should not stand.

The evidence adduced at the trial of this case was sharply conflicting, and clear issues were presented to the jury insofar as the facts were concerned. Material issues of credibility of the witnesses were presented, and the evidence was clearly sufficient to sustain the conviction of petitioner on the charges of selling Valium without a prescription, and, for that matter, on the charges of selling a controlled substance without a prescription, had he been properly indicted therefor.

The principal witness against the petitioner was an informer, who had been convicted on a number of different criminal charges, but police officers also observed the sales which took place and identified the petitioner.

During the course of the presentation of the State's case in chief, the State's witnesses were permitted, over objection of counsel for the petitioner, to refer to other sales made by the petitioner to the informer, in addition to those which were contained in the indictments. The informer claimed to have known the petitioner for many years, and said that he had been regularly supplied with drugs by the petitioner. He further testified that he had made numerous sales of controlled substances for the petitioner and had turned the proceeds over to the latter. Although these charges were heatedly denied by the petitioner, the determination of the facts was clearly a matter for decision by the jury.

Petitioner objected, however, to the introduction of evidence of other offenses, besides those for which he was on trial, and we granted certiorari to consider the question of whether the admission into

evidence of other unrelated offenses was erroneous, and if so whether reversible error occurred. In the majority opinion of the Court of Criminal Appeals, it was stated that the admission into evidence of these previous offenses was probably error, but the Court felt that it was harmless and did not affect the results of the trial. The dissenting member of the Court felt that prejudicial error had occurred.

Our examination of this record, however, convinces us that error was not committed. The starting point in consideration of proof of prior crimes, of course, is that such evidence is not admissible and that there is a general rule of exclusion. There are a number of well-defined exceptions to the rule, however, and proof of prior offenses is admissible in a number of circumstances. As stated in the case of *Caruthers v. State*, 219 Tenn. 21, 406 S.W.2d 159 (1966):

"The cases in this State establish that such evidence is admissible if (1) it is to be used to prove identity, knowledge as reflecting an intent, a plan or system, a course of conduct or is a part of the *res gestae* of the crime charged, and (2) the evidence is 'clear and convincing' that the defendant is the person who committed the prior offense." 219 Tenn. at 26, 406 S.W.2d at 161.

The opening statements of counsel are not in the record before us, but in a colloquy with the trial judge it was stated by counsel that in the opening statement for petitioner, his attorney admitted that the petitioner had made one unauthorized sale of Valium to the informer, this having occurred on October 21, 1972. It was the theory of the petitioner, as evidenced in the cross-examination of the State's witnesses, that this sale was made by the petitioner to the informer out of fear, and under threats of exposure and duress. It was the theory of the State, of course, that no such motive existed on the part of the petitioner and that he made the sales to the informer voluntarily and as a part of their continuing relationship which had existed over a sub-

stantial period of time. Further, in the cross-examination of the State's witnesses, counsel for the petitioner made a sharp issue as to the identity of the person allegedly making two of the sales to the informer, these having occurred in the late afternoon or early evening under lighting conditions where visibility was limited.

Since issues had been made by petitioner's counsel as to his motives and as to identity, we are of the opinion that the trial judge was not in error in admitting proof of other offenses on those issues. The trial judge carefully instructed the jury that this evidence was to be received for these limited purposes and no other. Further, since counsel for the petitioner admitted in open court that petitioner had participated in one unauthorized and illegal sale of Valium, on October 21, 1973, petitioner is hardly in a position to complain of evidence surrounding that transaction. He categorically denied making the other sales and contended that if they were made, they were made by some other person.

Although proof of prior offenses is to be received with caution because of its highly prejudicial nature, under the issues as made up and revealed in this record, we are of the opinion that there was no error on the part of the trial judge in admitting the evidence complained of.

It results that we affirm the conviction of the petitioner on the charge of selling Valium without a prescription on October 23, 1972. We reverse and set aside his conviction for the sale of a controlled substance for the reasons hereinabove set out.

The costs will be equally divided between the State and the petitioner.

FONES, C. J., and COOPER, BROCK and HENRY, JJ., concur.