**STATE of Iowa, Appellee,**

v.

**Larry Lee WRIGHT, Appellant.**

**No. 87–1347.**

Supreme Court of Iowa.

May 17, 1989.

David S. Nelson, Cedar Rapids, for appellant.

Thomas J. Miller, Atty. Gen., Mark J. Zbieroski, Asst. Atty. Gen., Denver D. Dillard, County Atty., and Janet Peterson and Steven Hansen, Asst. County Attys., for appellee.

McGIVERIN, Chief Justice.

Defendant, Larry Lee Wright, appeals his conviction of operating while intoxicated (OWI), in violation of Iowa Code section 321J.2. On appeal, defendant alleges that the results of his breath test were erroneously admitted into evidence at trial. We vacate the decision of the court of appeals, and affirm the judgment of the district court.

I. *Background Facts and Proceedings.* On December 26, 1986, Richard McLaud and Darryl Hunter, reserve peace officers for the city of Center Point, Iowa, observed a vehicle traveling within the city limits in excess of the speed limit. While in pursuit of this vehicle, the officers also observed it leave and then reenter the roadway. The driver of the vehicle, defendant, was thereafter detained and asked to produce his driver's license. Defendant did so with some difficulty; initially he produced a department store credit card. He also exhibited other signs of insobriety.

A number of field sobriety tests were then administered. Defendant was unable to successfully complete these tests. The officers then radioed deputy Michael Cline of the Linn County sheriff's department. Upon arrival at the scene, deputy Cline administered to defendant a preliminary breath test, which registered positive for the presence of alcohol. Deputy Cline and officers McLaud and Hunter formed the opinion that reasonable grounds existed to believe defendant was under the influence of alcohol. *See* Iowa Code § 321J.6(1).

Defendant was then transported to the Linn County jail. Defendant ultimately provided a breath sample, which was found to contain an "alcohol concentration," as defined in Iowa Code section 321J.1(1), of .212. (A person commits the offense of operating while intoxicated if the person operates a motor vehicle while having an alcohol concentration of .10 or more. Iowa Code § 321J.2(1)(b).) The breath sample was obtained by officer McLaud pursuant to the implied consent test procedures of Iowa Code section 321J.6. Before asking for the breath sample, officer McLaud read the implied consent form to defendant and advised him that he could refuse the test.

In his pretrial motion to suppress, defendant contended officer McLaud was not a "peace officer," as defined in section 321J.1(7), and therefore was not authorized to invoke the implied consent test procedures of section 321J.6. After the district court overruled this motion, the case was

submitted for trial to the court by stipulation into evidence of the minutes of testimony. The district court found defendant guilty, and he appealed.

We transferred the case to the court of appeals, which reversed defendant's conviction. We then granted the State's application for further review.

II. *Preservation of error.* The State contends that by stipulating to trial based on the minutes of testimony, defendant has failed to preserve error regarding the admission of the breath test results into evidence.

■ The rule is well settled that "an adverse ruling on a pretrial suppression motion will suffice to preserve error for appellate review even though there is no attendant trial objection to the controverted material when offered in evidence." *State v. Hilpipre*, 242 N.W.2d 306, 309 (Iowa 1976); *see also State v. Whitsel*, 339 N.W.2d 149, 152 (Iowa 1983). We discern no reason why the rule should not apply with equal force under the present record concerning a trial on stipulated evidence. Therefore, any error regarding admission of the breath test evidence was adequately preserved.

III. *Authority of officer McLaud.* One of the requirements of section 321J.6 is that the breath test "shall be administered at the written request of a peace officer." Section 321J.1(7) provides:

7. "Peace officer" means:

a. A member of the highway patrol.

b. A police officer under civil service as provided in chapter 400.

c. A sheriff.

d. A regular deputy sheriff who has had formal police training.

e. *Any other law enforcement officer who has satisfactorily completed an approved course relating to motor vehicle operators under the influence of alcoholic beverages at the Iowa law enforcement academy or a law enforcement training program approved by the department of public safety.*

(Emphasis added.)

Defendant contends officer McLaud was not a "law enforcement officer," as provided by paragraph (e), because the Center Point reserve police force allegedly was not properly established or supervised, as required by Iowa Code chapter 80D.

A. *Establishment of reserve force.* Defendant contends the State failed to introduce any evidence the city council approved the establishment of a reserve force.

Iowa Code section 80D.1 provides in pertinent part:

> The governing body of a city, county, or the state of Iowa may provide for the establishment of a force of reserve peace officers, and may limit the size of the reserve force.... A reserve peace officer is a volunteer, nonregular, sworn member of a law enforcement agency who serves with or without compensation, has regular police powers while functioning as an agency's representative and participates on a regular basis in the agency's activities including those of crime prevention and control, preservation of the peace and enforcement of the law.
>
> This chapter constitutes the only procedure for appointing reserve peace officers.

In June 1986, the Center Point city council approved the hiring of McLaud and Hunter as reserve officers. Thereafter, the city council consistently authorized paychecks for both officers in accordance with that status.

■ At the hearing on defendant's motion to suppress, three city councilmen testified regarding the vote to approve the hiring of officers McLaud and Hunter. Their testimony clearly shows the choice before the council was to hire reserve officers or to hire the Linn County Protection Agency, which employed sheriff's deputies. By a margin of one vote, the council decided to hire the reserve officers. We believe this decision was sufficient to establish a reserve police force, even though the council apparently never used the word "establish." The subsequent disbursements of

paychecks to the officers amply support this conclusion.

B. *Supervision of reserve force.* Defendant also contends the appointment of Chief Swain did not satisfy the supervisory requirements of chapter 80D, because (1) Chief Swain was not a member of the regular Center Point police force, and (2) officers McLaud and Hunter did not serve "under the direction" of Chief Swain or a regular Center Point peace officer.

Section 80D.9 provides for the supervision of reserve peace officers as follows:

Reserve peace officers shall be subordinate to regular peace officers [and] shall not serve as peace officers unless under the direction of regular peace officers.... Each department for which a reserve force is established shall appoint a regular force peace officer as the reserve force coordinating and supervising officer. That regular peace officer shall report directly to the chief of police....

Our goal in construing this statute is to ascertain legislative intent. We consider the spirit of the statute as well as the words so that a practical and logical construction is given. *Emmetsburg Ready Mix Co. v. Norris*, 362 N.W.2d 498, 499 (Iowa 1985); *Hansen v. State*, 298 N.W.2d 263, 265–66 (Iowa 1980). The words of the statute are given their ordinary meaning unless it is clear the legislature intended a different meaning or unless such a construction would defeat the manifest intent of the legislation. *Casteel v. Iowa Dep't of Transp.*, 395 N.W.2d 896, 898 (Iowa 1986); *Lauhoff Grain Co. v. McIntosh*, 395 N.W. 2d 834, 839 (Iowa 1986).

On July 24, 1986, Russ Swain was appointed as the supervising officer for the Center Point reserve force by Thomas Neenan, the city's mayor and acting police chief. At the time of his appointment, Swain was the chief of police in Palo, Iowa, which is located approximately nine miles from Center Point. Chief Swain continued to hold his position in Palo and was not paid for his work as supervising officer in Center Point.

■ We do not believe section 80D.9 prohibits a regular peace officer from one community from serving as the coordinating and supervising officer for the reserve force of another community. The requirement that the supervisor be a "regular force peace officer" is intended to guarantee that the reserve force be led by an individual with that level of training and certification. Chief Swain clearly possessed the requisite expertise, and was thus a "regular force peace officer" for purposes of Iowa Code section 80D.9.

■ Furthermore, we believe that Center Point reserve peace officer Richard McLaud, who arrested defendant and administered the implied consent test to him, was acting "under the direction of" Chief Swain for purposes of section 80D.9.

At the time of defendant's arrest, McLaud had been a Center Point reserve peace officer for seven months. McLaud's prior experience included twelve years of service on the Palo police force and thirteen years of service as a special deputy with the Linn County sheriff's department. Defendant concedes that McLaud had received training from the Iowa law enforcement academy and attended the implied consent school. McLaud was certified to perform traffic stops, make arrests, and to test drivers potentially under the influence of alcohol.

Iowa Code section 80D.6 states:

Reserve peace officers shall serve as peace officers on the orders and at the discretion of the chief of police, sheriff, or director of public safety or the director's designee, as the case may be.

While in the actual performance of official duties, reserve peace officers shall be vested with the same rights, privileges, obligations, and duties as any other peace officer.

McLaud served as a reserve peace officer on the order and at the discretion of Center Point acting police chief and mayor, Thomas Neenan. Thus, the requirements of section 80D.6 were satisfied.

As stated before, the Center Point acting police chief, mayor Neenan, had previously appointed Palo police chief Russ Swain to

supervise the Center Point reserve police officers. Swain took and filed an oath of office in that regard. Swain was aware of the reserve officers' hours and training. The trial court found that Swain communicated with them by telephone and radio and also occasionally conducted staff meetings with the reserve officers. Swain reported directly to acting chief of police Neenan.

In *Ross v. Long*, 219 Iowa 471, 474, 258 N.W. 94, 95 (1935), we discussed the meaning of "under the direction" in a statute. In *Ross*, a debtor challenged the authority of a conservator to maintain an action on behalf of a bank. There we said that a statute authorizing the appointment of a receiver to act "under the direction" of the comptroller meant no more than that the receiver should be *subject* to the direction of the comptroller. *Id.* Applying this reasoning in *Ross*, we determined that the bank conservator was not paralyzed by the limited direction of the comptroller, but was merely subject to the general direction of the comptroller, and that special permission was not necessary before the conservator could commence an action on an ordinary claim. *Id.*

The same interpretation should be given to the identical language contained in section 80D.9. There can be little dispute that McLaud was subject to Swain's direction. Section 80D.9 should not be construed to paralyze McLaud from apprehending and testing a suspect for OWI in the absence of, or without checking with, Swain.

The purpose of chapter 80D is to provide an optional reserve police force to assist the regular force in performing its duties. *See* 1981 Op.Iowa Att'y Gen. 148 (1982). "To require the direct, physical supervision of a regular peace officer at all times would add to rather than alleviate the burdens of the regular force." *Id.* Furthermore, supervision and direction as required by section 80D.9 should be provided to a degree which is reasonable, subject to the determination of the supervising officer.

It is evident from a review of the record in the present case that McLaud was a highly competent reserve officer who required little direct supervision. In recognition of this fact, Chief Swain made himself available primarily on an "as needed" basis while McLaud remained subject to Swain's direction. We cannot conclude that this level of direction was so deficient as to render McLaud without authority.

Concerning the defendant's breath test, no unusual exercise of judgment was required of officer McLaud when administering the breath test for alcohol concentration. *Cf. Ross*, 219 Iowa at 474, 258 N.W. at 95 (no special permission necessary to commence an ordinary action). The uncontroverted evidence established that McLaud was certified by the Iowa Department of Public Safety to invoke the implied consent procedures and had done so in the past. He properly followed the test procedures on the implied consent form provided by the Iowa Department of Transportation.

■ McLaud thus qualified as a "peace officer" as defined in Iowa Code section 321J.1(7)(e) and was eligible to request and administer implied consent tests under Iowa Code section 321J.6, as he did here.

IV. *Disposition.* Based upon the present record, we conclude that the city of Center Point adequately complied with chapter 80D when establishing, maintaining and supervising its reserve police force. We further conclude that, at the time of defendant's arrest, reserve peace officer Richard McLaud was a "peace officer" for purposes of Iowa Code section 321J.1(7), and that the results of defendant's breath test were properly admitted into evidence at trial. Therefore, we vacate the decision of the court of appeals and affirm the judgment of the district court.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.

All Justices concur except SNELL and NEUMAN, JJ., who dissent.

SNELL, Justice (dissenting).

I respectfully dissent. The majority has ignored the legal proposition applicable to this case that we say is so well established that authorities need not be cited in its support. That proposition is that:

In construing statutes the court searches for the legislative intent as shown by what the legislature said, rather than what it should or might have said.

Iowa R.App.P. 14(f)(13).

What the legislature said on this issue is that reserve peace officers are subordinate and shall not serve unless under the direction of regular peace officers. The meaning of "direction" accorded by the majority is no more than paper direction arising from the appointment of Chief Swain as the coordinating and supervising officer. Though possessed with authority, Chief Swain did not exercise it. With regard to the arrest of defendant Wright, Chief Swain did no directing of reserve officers McLaud and Hunter, and had no knowledge of what police actions they were undertaking.

The majority notes with satisfaction that Officer McLaud was well trained to perform traffic stops, make arrests, and test drivers for alcohol consumption. However, its decision is far broader and hazardous in application. The rule of law established here will apply equally to the reserve peace officer who makes an illegal search or an unlawful arrest.

Our goal in construing this statute is to ascertain legislative intent. We consider the spirit of the statute as well as the words so that a practical and logical construction is given. *Emmetsburg Ready Mix Co. v. Norris*, 362 N.W.2d 498, 499 (Iowa 1985); *Hansen v. State*, 298 N.W.2d 263, 265–66 (Iowa 1980). The words of the statute are given their ordinary meaning unless it is clear the legislature intended a different meaning or unless such a construction would defeat the manifest intent of the legislation. *Casteel v. Iowa Dep't of Transp.*, 395 N.W.2d 896, 898 (Iowa 1986); *Lauhoff Grain Co. v. McIntosh*, 395 N.W. 2d 834, 839 (Iowa 1986). In *State v. Webb*, 261 Iowa 1151, 1157, 156 N.W.2d 299, 303 (1968), we said, "However, we must construe the statute as it is written and not according to our reaction to the present situation."

The requirement that the supervisor be a "regular force peace officer" is intended to guarantee that the reserve force be led by an individual with that level of training and certification. Chief Swain clearly possessed the requisite expertise. However, the record reflects Officers McLaud and Hunter did not actually serve under Chief Swain's direction or under the direction of Barb Roorda, the only regular peace officer on the Center Point force. The testimony of Officer McLaud and Chief Swain was that the officers could call Chief Swain whenever they had any questions or problems. When Officer McLaud was asked whose direction he worked under, he stated, "I normally work under myself. If I have got any questions or anything, I just go ahead and check with Russ." However, he had not contacted Chief Swain at all on the night of Wright's arrest; nor had he contacted Officer Roorda, as she was away on vacation.

Chief Swain testified that he understood his function as supervising officer was merely to help or assist the reserve officers in the performance of their duties. He was not responsible for the reserves' work schedule, and did not always know what hours they worked. Nor did Chief Swain have regular hours anytime when he was on duty for Center Point business.

It is clear from the record that the only "direction," if any, provided by Chief Swain was that afforded by the availability of his advice, should the reserve officers have questions or problems. Stated otherwise, Chief Swain operated as a consulting officer, not as a coordinating and supervising officer responsible for giving the reserve officers directions of at least a general nature.

The word "direction" is of a common usage and understanding. It means something that is imposed as an authoritative or explicit instruction. *See Hueske Implement Co. v. Shipley*, 445 P.2d 9, 12 (Wyo. 1968); *Way v. Patton*, 195 Or. 36, 46–48, 241 P.2d 895, 900 (1952); *American Heritage Dictionary* 400 (2d College ed.). *Cf. Hughes v. Van Bruggen*, 44 N.M. 534, 536–39, 105 P.2d 494, 496–97 (1940) (distin-

guishing "to advise" and "to instruct," and noting that "instructions" and "directions" are synonymous). "Direction" has also been said to be "the act of governing, ordering, or ruling." *Kellyville Coal Co. v. Bruzas*, 223 Ill. 595, 599–601, 79 N.E. 309, 311 (1906).

This does not mean that every action of a reserve officer must be explicitly requested by, or performed in the physical presence of, a regular peace officer. It does mean that action taken by a reserve officer must be made under the knowing control of a regular peace officer. *See* 1981 Op.Iowa Att'y Gen. 148 (1982).

In this case it cannot be said Officers McLaud and Hunter were directed to do anything, even of a general nature, by Chief Swain or Officer Roorda on December 26, 1986. Under the procedure employed by Center Point, Chief Swain had no idea where Officers McLaud or Hunter were or what they were doing, unless they ran into trouble and called him.

The supervision and direction required by section 80D.9 should be provided to a degree which is reasonable, subject to the determination of the supervising officer. However, where, as here, the determination made is that *no* supervision or direction will be provided unless explicitly requested, the statutory requirement has been effectively inverted. The amount of direction to be provided is no longer within the discretion of the supervising officer, but rather has been placed within the discretion of the reserve officers.

The purpose of supervision is to protect the public from the harm potentially flowing from the acts of an overzealous partially trained peace officer. The majority leaves in that officer's mind the decision whether any direction is necessary before action is taken. Thus, the only protection afforded the public from the under-trained officer's ill-conceived judgments on what to do is that somehow the officer will desire direction before acting and ask for it. Supervision of this sort will always be more hopeful than real.

I do not believe this result is consonant with what the legislature said or intended.

Officer McLaud was not acting "under the direction" of a regular peace officer when he administered the breath test to defendant. His actions were in violation of section 80D.9.

I would affirm the court of appeals, reverse the judgment of the district court and remand for a new trial.

NEUMAN, J., joins this dissent.