# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
December 6, 2022 Session Heard at Johnson City[1]

## STATE OF TENNESSEE v. DASHUN SHACKLEFORD

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Knox County**
**No. 109937   Steven Wayne Sword, Judge**

———————————————————

**No. E2020-01712-SC-R11-CD**

———————————————————

This appeal concerns the criminal gang-enhancement statute, Tennessee Code Annotated section 40-35-121, and specifically what is required in an indictment to sufficiently plead and provide notice under the statute. Dashun Shackleford ("Defendant") was arrested for aggravated robbery as to four individuals in September 2016, along with his friend and fellow gang member, Jalon Copeland. Defendant's indictment contained twenty counts: four alternative counts each of aggravated robbery against four victims and four corresponding counts of criminal gang offense enhancement. The gang-enhancement statute requires the State to give notice in separate counts of the indictment of the enhancement applicable under the statute. The indictment also alleged that Defendant was a "Crips" gang member and listed the convictions of fifteen alleged fellow Crips members to prove Defendant's gang had a "pattern of criminal gang activity," as also required by the gang-enhancement statute. A Knox County jury convicted Defendant as charged. The trial court merged the aggravated robbery convictions into four counts and imposed a total effective sentence of twenty years to be served at eighty-five percent. In this case, the gang-enhancement conviction increased Defendant's aggravated robbery convictions from Class B felonies to Class A felonies. Defendant appealed, arguing, among other things, that the evidence at trial was insufficient to support his gang-enhancement conviction. The Court of Criminal Appeals agreed, taking particular issue with the allegation in the indictment that Defendant and the other gang members listed therein were plain Crips. In the gang-enhancement phase of trial, the proof established that the majority of the gang members listed in the indictment, including Defendant, were members of several different subsets of the Crips gang, with only one of the listed men identified as a plain Crip. The intermediate court concluded that the State failed to prove that Defendant's subset gang had engaged in a pattern of criminal gang activity and failed to comply with the notice requirements of the

---

[1] Oral argument was heard in this case on the campus of East Tennessee State University in Johnson City, Tennessee, as part of the S.C.A.L.E.S. (Supreme Court Advancing Legal Education for Students) project.

gang-enhancement statute. In doing so, the court also, *sua sponte*, determined that a fatal variance existed between the indictment and proof at trial. The Court of Criminal Appeals, therefore, reverted Defendant's aggravated robbery convictions to a classification lower in the absence of the gang enhancement. After review, we conclude that the Court of Criminal Appeals erred in its decision. The gang-enhancement statute is worded broadly and does not require the State to specify in the indictment a criminal defendant's gang subset nor that the defendant is in the same gang subset as the individuals whose criminal activity establishes the gang's "pattern of criminal gang activity." Defendant waived all other issues by failing to properly raise them before the trial court or on appeal. Therefore, the decision of the Court of Criminal Appeals is reversed and the trial court's judgments are reinstated.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed. Judgments of the Trial Court Affirmed.**

ROGER A. PAGE, C.J., delivered the opinion of the court, in which SHARON G. LEE, JEFFREY S. BIVINS, HOLLY KIRBY, and SARAH K. CAMPBELL, JJ., joined.

Jonathan Skrmetti, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Andrew C. Coulam, Senior Assistant Attorney General; Edwin Alan Groves, Jr., Assistant Attorney General; Charme P. Allen, District Attorney General; and Ta Kisha Fitzgerald and Philip H. Morton, Assistant District Attorneys General, for the appellant, State of Tennessee.

Clinton E. Frazier, Maryville, Tennessee, for the appellee, Dashun Shackleford.

**OPINION**

**I. Facts & Procedural Background**

This case arises from the aggravated robbery of four individuals that took place in the Mechanicsville neighborhood of Knoxville, which was known to be controlled by the Crips street gang. Dashun Shackleford ("Defendant") and Jalon Copeland robbed four teenagers at gunpoint while they were playing basketball at a neighborhood court. That night, the police were notified of the offenses. The following day, one of the teenagers saw the same car driven by the perpetrators parked in front of a house on his street. He notified police, and Defendant and Mr. Copeland were arrested. Defendant's subsequent indictment contained twenty counts: four alternative counts each of aggravated robbery against four victims and four corresponding counts of criminal gang offense enhancement.

Defendant's trial began in June 2018. The first phase of the trial focused on Defendant's guilt. The jury found Defendant guilty on all counts.[2] The second phase of the trial, which concerned the gang-enhancement counts, is the focus of the present appeal. The following facts are a summary of the testimony presented by three members of the Knoxville Police Department ("KPD") during the gang-enhancement phase.

Detective Thomas Walker testified as an expert in the field of criminal gang identification. He works for the Knox County Sheriff's Office gang intelligence unit and has been a member of the Tennessee Gang Investigators Association ("TGIA") since 1999. Detective Walker testified that Defendant and Mr. Copeland admitted to being members of the Crips, specifically the Rollin' 90s subset in Chattanooga. Detective Walker explained that Defendant listed himself on social media as a "Neighborhood Crip," a term that encompasses all Crip subsets. Detective Walker described the history of the Crips. The Crips are a criminal gang that originated in Los Angeles in the 1970s. Over the years, individual neighborhoods divided into hundreds of subsets that control specific territories. These subsets migrated across the United States, but they "still fall under the Crip umbrella" and cooperate with one another to varying degrees. The Rollin' 90s Crips originated in and are still active in Los Angeles.

Police also identified Defendant as a Crip based on a two-prong assessment developed by statute and the TGIA to determine whether a person is a member of a gang.[3] Points are assigned based on criteria associated with gang involvement, and individuals are considered gang members if they accumulate ten or more points. Defendant accumulated more than the requisite number of points by admitting to being a gang member, posing for pictures on social media, "throwing gang-specific hand signs and wearing gang-specific colors," associating and posing with known gang members in Chattanooga,[4] and having a felony criminal history. The second prong of the assessment was fulfilled because he was confirmed as a member of the Crips by the Chattanooga Police Department's ("CPD") gang unit.

Defendant and Mr. Copeland were both confirmed members of the Crips. Thus, the State sought to enhance Defendant's alleged crimes under Tennessee's gang-enhancement

---

[2] The trial court merged the aggravated robbery counts so there was one surviving aggravated robbery count for each victim.

[3] This assessment is used by state-certified gang units. At the time of the trial, Chattanooga Police Department, Hamilton County Sheriff's Department, Knox County Sheriff's Department, Knoxville Police Department, Bristol Police Department, and the Tennessee Department of Correction were the only state law enforcement agencies to have full-time, certified gang units.

[4] Defendant and Mr. Copeland were visiting Knoxville from Chattanooga.

statute, Tennessee Code Annotated section 40-35-121.[5] To do so, they included the convictions of fifteen other alleged Crips members in the indictment. The indictment specifically alleged the following:

> Dashun Shackleford . . . was a criminal gang member pursuant to T.C.A. 40-35-121(a)(2) at the time of the commission of the criminal gang offense . . . and is therefore subject to enhanced punishment pursuant to T.C.A. 40-35-121(b). The State does hereby specify, charge and give notice to Dashun Shackleford . . . [of] its intent to seek enhanced punishment pursuant to T.C.A. 40-35-121(b) and T.C.A. 40-35-121(g) and 40-35-121(h)(1)(A). At the time of the . . . underlying criminal gang offense Dashun Shackleford . . . knowingly was a criminal gang member of the Crips, pursuant to T.C.A. 40-35-121(a)(2). The members of the criminal gang, Crips, have engaged in a pattern of criminal gang activity in that the Crips have prior convictions for the commission of at least two or more criminal gang offenses classified as felonies which occurred on separate occasions and within five (5) years of each other, as follows: 1. On November 3rd, 2011 . . . Adrian H. Thomas, a member of the Crips, was convicted of possession with intent to sell cocaine more than .5 grams in the criminal court for Knox County, Tennessee . . .

The indictment continues on to list the convictions of fifteen other "member[s] of the Crips"[6] for crimes committed in Knox County and one committed in neighboring Union County. The fifteen other Crips members listed in the indictment belonged to the 52 Hoover

---

[5] The State also gave notice of the enhancement factors it intended to use:

> (2) The defendant was a leader in the commission of an offense involving two [] or more criminal actors; . . . (13) At the time the felony was committed, . . . the defendant [was] . . . (C) Released on probation; . . . (16) The defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult."

Tenn. Code Ann. § 40-35-114. The only factors listed are the ones that were actually taken into consideration by the court at sentencing.

[6] (1) Adrian H. Thomas (possession with intent to sell), (2) Devon Holloway (aggravated assault), (3) Gregory Williamson (aggravated assault), (4) Jayshawn Williams (aggravated burglary), (5) William Wheat (attempted aggravated robbery, aggravated burglary), (7) Ronald Nelson (robbery), (8) Lonnie McNair (possession with intent to sell), (9) Bekweri Bost (possession with intent to sell), (10) James Blance (facilitation of aggravated robbery), (11) James Coney (attempted possession of cocaine), (12) Devonte Bonds (attempted second degree murder), (13) Thomas Bishop (attempted second degree murder), (14) Jason Sullivan (attempted second degree murder), (15) Nikos Burgins (aggravated rape, aggravated robbery, especially aggravated kidnapping), (16) Dominick J. Ratliff (aggravated assault). The Court of Criminal Appeals case *State v. Bonds*, 502 S.W.3d 118 (Tenn. Crim. App. 2016), which will be referenced later in the opinion, is about the convictions of Bonds, Bishop, and Sullivan.

- 4 -

Crips, 107 Hoover Crips, and "plain Crips." The indictment did not denominate the specific subsets.

Over the years, the various subsets have had conflict with each other, but despite questioning during cross-examination, Detective Walker never mentioned an existing rivalry between the Rollin' 90s Crips and the Hoover Crips in East Tennessee. He believed the two subsets actually "got along pretty well." Detective Walker agreed that "even if they are different Crip sets, they're still Crips." He also noted that there are "eight different Crip sets in Knoxville" that "cooperate when . . . it benefits them and their gang." In Chattanooga, there are also multiple Crip sets. When asked if the Hoovers get along with the Rollin' 90s, Detective Walker specified that Defendant "obviously . . . got along with [the 52 Hoovers] pretty well up here, or he wouldn't be able to stay in the area."

KPD narcotics investigator Jacob Wilson, who patrolled the Mechanicsville neighborhood for a large part of his career, testified that he was familiar with the house where Defendant was arrested. He stated that he had seen a rise in activity at the house "particularly since the . . . incident." Since the incident, police had been "dispatched either to that residence or in the immediate area" several times. He also stated that the house was known to temporarily house gang members, "particularly Crips, from the Chattanooga area." Investigator Wilson testified that he "noticed an uptick in known Crip gang members . . . from the Chattanooga area in the Mechanicsville area and in particular [the house where Defendant was arrested]." CPD Sergeant Josh May testified that they "are seeing a proliferation of [their] gang members coming up [to Knoxville], . . . a lot of different sets."

Notably, Detective Walker first testified that each of the individuals listed in the indictment were members of the Crips. In Defendant's cross-examination of Detective Walker, Defendant inquired about the subsets of the individuals listed in the indictment, and then confirmed that Defendant was from a different subset. Detective Walker noted that all of the Crips listed in the indictment associate in Mechanicsville, where the crime took place. Defendant did not further develop this testimony and did not further raise the subset issue before the trial court.

Defendant conceded that aggravated robbery was an enumerated criminal gang offense and that he was a criminal gang member at the time of the offenses. The jury found that Defendant was a criminal gang member at the time of the offense, that he committed a criminal gang offense, and that he committed the offense at the direction of, in association with, or for the benefit of his criminal gang or a member of the gang. Accordingly, the trial court applied the gang enhancement, elevating the Class B aggravated robberies to Class A felonies, merged the sixteen convictions into four, and ordered Defendant to serve concurrent twenty-year sentences for each count at eighty-five percent.

The trial court denied Defendant's motion for new trial. On appeal, he argued that the trial court erred by failing to dismiss the gang-enhancement counts because the statute violates the constitutional rights of due process and expressive association. He also argued that the trial court erred by affirming the convictions for gang enhancement because the proof was insufficient to support those verdicts. The Court of Criminal Appeals agreed, albeit for different reasons. *State v. Shackleford*, No. E2020-01712-CCA-R3-CD, 2022 WL 818833, at *6 (Tenn. Crim. App. March 18, 2022). The intermediate court concluded that there was a fatal variance between the indictment and the proof at trial, preventing the State from sufficiently proving the gang-enhancement counts. *Shackleford*, 2022 WL 818833, at *11.

This Court granted the State's ensuing application for permission to appeal.

## II. ANALYSIS

As explained above, this appeal reaches us in the context of a review for sufficiency of the evidence. To determine whether the evidence is sufficient to support a conviction, an appellate court asks "whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (first citing Tenn. R. App. P. 13(e); and then citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "In making this determination, we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010) (citing *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). We do not reweigh the evidence, *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000), because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury, as the trier of fact, *Majors*, 318 S.W.3d at 857. This Court applies the same standard of review "whether the conviction is based upon direct or circumstantial evidence." *Dorantes*, 331 S.W.3d at 379 (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (1958)), *abrogated on other grounds by State v. Miller*, 638 S.W.3d 136 (Tenn. 2021). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Bland*, 958 S.W.2d at 659 (citing *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." *Hanson*, 279 S.W.3d at 275 (citing *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992)).

Our review of this case also requires this Court to engage in statutory construction—namely, what must the State allege in an indictment when seeking a criminal gang enhancement under Tennessee Code Annotated section 40-35-121. In addition, the State has asked this Court to consider whether Defendant waived plenary review of the variance issue when he did not raise it at trial or on appeal. The question of statutory construction is a question of law, *State v. Welch*, 595 S.W.3d 615, 621 (Tenn. 2020), as is a question of waiver, *Jackson v. Burrell*, 602 S.W.3d 340, 344 (Tenn. 2020). Thus, we review these questions de novo, with no presumption of correctness. *Jackson*, 602 S.W.3d at 344; *Welch*, 595 S.W.3d at 621.

### A. Gang-Enhancement Statute

The crux of the criminal gang-enhancement statute is contained in Tennessee Code Annotated section 40-35-121(b) (2016), which provides as follows:

> (b) A criminal gang offense committed by a defendant shall be punished one (1) classification higher than the classification established by the specific statute creating the offense committed if:
> (1) The defendant was a criminal gang member at the time of the offense; and
> (2) The criminal gang offense was committed at the direction of, in association with, or for the benefit of the defendant's criminal gang or a member of the defendant's criminal gang.

Subsection (g) of the statute further provides a notice requirement for the benefit of a criminal defendant when the State seeks to enhance his or her sentence. It provides:

> (g) If the defendant is charged with a criminal gang offense and the district attorney general intends to seek enhancement of the punishment . . . , the indictment, in a separate count, shall specify, charge and give notice of the subsection under which enhancement is alleged applicable and of the required prior convictions constituting the gang's pattern of criminal gang activity.

*Id.* § 40-35-121(g).

Also relevant to this appeal, subsection (a) of the statute provides definitions to the important terms used above:

> (a) As used in this section, unless the context otherwise requires:

- 7 -

(1) "Criminal gang" means a formal or informal ongoing organization, association or group consisting of three (3) or more persons that has:

(A) As one (1) of its primary activities, the commission of criminal gang offenses;

(B) Two (2) or more members who, individually or collectively, engage in or have engaged in a pattern of criminal gang activity;

(2) "Criminal gang member" is a person who is a member of a criminal gang, as defined in subdivision (a)(1), who meets two (2) or more of the following criteria:

(A) Admits to criminal gang involvement;

…

(D) Resides in or frequents a particular criminal gang's area, adopts their style or dress, their use of hand signs or their tattoos and associates with known criminal gang members;

… or

(G) Is identified as a criminal gang member by physical evidence such as photographs or other documentation;

…

(4)(A) "Pattern of criminal gang activity" means prior convictions for the commission or attempted commission of, facilitation of, solicitation of, or conspiracy to commit:

(i) Two (2) or more criminal gang offenses that are classified as felonies; or

(ii) Three (3) or more criminal gang offenses that are classified as misdemeanors; or

(iii) One (1) or more criminal gang offenses that are classified as felonies and two (2) or more criminal gang offenses that are classified as misdemeanors; and

(iv) The criminal gang offenses are committed on separate occasions; and

(v) The criminal gang offenses are committed within a five-year period[.]

*Id.* at (a)(1)–(2), (4)(A).

Aggravated robbery is an enumerated criminal gang offense. *Id.* at (a)(3)(B)(x). Defendant's indictment charged criminal gang enhancement for each of the aggravated robbery counts.

Before the Court of Criminal Appeals, Defendant argued the State had not shown sufficient proof to support his gang-enhancement charges. *State v. Shackleford*, No. E2020-01712-CCA-R3-CD, 2022 WL 818833, at *6 (Tenn. Crim. App. Mar. 18, 2022). The Court

of Criminal Appeals agreed, taking particular issue with the allegation in the indictment that Defendant and the other gang members listed therein were plain Crips. *Id.* at *10–11. At trial, Defendant conceded that he was a "criminal gang member" at the time of the offenses, and both Defendant and Mr. Copeland admitted to police following their crimes that they were members of the Crips gang. In the gang-enhancement phase of trial, the proof established that the majority of the gang members listed in the indictment, including Defendant, were members of several different subsets of the Crips gang, with only one of the listed men identified as a plain Crip. The State's expert, Detective Walker, explained that even though there are many different subsets of the Crips, "[t]hey still fall under the Crip umbrella." He emphasized that various social media posts depicted Defendant using gang signs and physical gestures that apply to multiple Crips subsets, including the Rollin' 90s. Detective Walker noted the use of the word "cuz" on one social media posting, which he testified is a "generic term for all Crips." The intermediate court concluded that the State failed to prove that Defendant's subset gang had engaged in a pattern of criminal gang activity and failed to comply with the notice requirements of the gang-enhancement statute. *Shackleford*, 2022 WL 818833, at *10–11.

On appeal before this Court, the State argues that the statute does not require the indictment to specify the gang subset to establish a pattern of criminal gang activity. It argues that the settled case law already gives defendants the opportunity to seek a bill of particulars if they want more information about the indictment. Thus, the indictment is not required to allege granular details. *See State v. Smith*, 492 S.W.3d 224, 239–40 (Tenn. 2016) ("Indictments are reviewed from an 'enlightened standpoint of common sense and right reason rather than from the narrow standpoint of petty preciosity, pettifogging, technicality or hairsplitting fault finding.'"). Defendant, on the other hand, agrees with the Court of Criminal Appeals that the State did not provide adequate notice of the enhancement.

Thus, we are left to answer the question: Under the statute, is the State required to specify in the indictment a criminal defendant's gang subset or that the defendant is in the same gang subset as the individuals whose criminal activity establishes the gang's "pattern of criminal gang activity"?

When engaging in statutory interpretation, "well-defined precepts" apply. *State v. Frazier*, 558 S.W.3d 145, 152 (Tenn. 2018) (quoting *Tenn. Dep't of Corr. v. Pressley*, 528 S.W.3d 506, 512 (Tenn. 2017)); *State v. Howard*, 504 S.W.3d 260, 269 (Tenn. 2016) (quoting *State v. McNack*, 356 S.W.3d 906, 908 (Tenn. 2011)). "The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Howard*, 504 S.W.3d at 269 (quoting *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)); *see Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009) (citing *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008)). In construing statutes, Tennessee law provides that courts are to avoid a

construction that leads to absurd results. *Tennessean v. Metro. Gov't of Nashville*, 485 S.W.3d 857, 872 (Tenn. 2016) (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010)). "Furthermore, the 'common law is not displaced by a legislative enactment, except to the extent required by the statute itself.'" *Wlodarz v. State*, 361 S.W.3d 490, 496 (Tenn. 2012) (quoting *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 679 (Tenn. 2002)), *abrogated on other grounds by Frazier v. State*, 495 S.W.3d 246 (Tenn. 2016).

We look to "the language of the statute, its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment." *Spires v. Simpson*, 539 S.W.3d 134, 143 (Tenn. 2017) (quoting *State v. Collins*, 166 S.W.3d 721, 726 (Tenn. 2005)). Courts seek a reasonable interpretation "in light of the purposes, objectives, and spirit of the statute based on good sound reasoning." *Beard v. Branson*, 528 S.W.3d 487, 496 (Tenn. 2017) (quoting *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 286 (Tenn. 2001)). The words in a statute "must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 839 (Tenn. 2019) (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012)).

The purpose of subsection (g) is to put the criminal defendant on notice that the State is seeking to enhance his sentence based on membership in the listed gang. *See* Tenn. Code Ann. § 40-35-121(g). At trial, to enhance a sentence, the State must prove that the defendant's alleged gang meets the statutory definition of a "criminal gang," which requires a showing that the defendant's organization "engaged in a pattern of criminal gang activity." *Id.* §§ 40-35-121(a)(1), (g)–(h). Accordingly, the notice provision requires the State to specify the gang members and convictions it will use to do so.

When we look to the defined terms "criminal gang member" and "criminal gang" in subsection (a) of the statute, the definitions are admittedly rather circular. Even so, the fact remains that the legislature defined "criminal gang," in particular, quite broadly. The language requires that "[t]wo (2) or more members . . . have engaged in a pattern of criminal gang activity." *Id.* § 40-35-121(a). There is no indication of an intent to narrowly define a gang by its subsets.

The State complied with subsection (g)'s requirement that the indictment include "the required prior convictions constituting the gang's pattern of criminal gang activity" by alleging prior convictions from fifteen different gang members identified therein as Crips. Defendant was free to argue and present proof to the jury that he and the criminals listed in the indictment are in unrelated gangs that happen to share a name. Whether Defendant meets the criteria of a gang member and is in a criminal gang are questions for a properly-instructed jury.

We therefore conclude that the State met the statutory requirements of section 40-35-121. The Court of Criminal Appeals erred in concluding otherwise.

## B. Variance

We next consider the State's second issue—whether Defendant forfeited plenary review of the variance issue when he did not raise it at trial or on appeal.

A variance involves a "variation[] between an indictment and the evidence presented at trial." *State v. Mayes*, 854 S.W.2d 638, 640 (Tenn. 1993). For a variance to be held fatal, "it must be deemed to be material and prejudicial." *State v. Moss*, 662 S.W.2d 590, 592 (Tenn. 1984). A variance "is not material where the allegations and proof substantially correspond." *Id.* A variance is not prejudicial:

> (1) if the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial, and (2) if the variance is not such that it will present a danger that the defendant may be prosecuted a second time for the same offense; all other variances must be considered to be harmless error.

*Id.*

The Court of Criminal Appeals determined that the State failed to "sufficiently prove[] the gang enhancement counts based on the fatal variance between the indictment and the proof presented during the gang enhancement phase of trial." *Shackleford*, 2022 WL 818833, at *10. *But see State v. Weilacker*, No. M2016-00546-CCA-R3-CD, 2017 WL 6210857, at *4 (Tenn. Crim. App. Dec. 8, 2017), *perm. app. granted* (Tenn. May 21, 2018).[7] Both the State and Defendant agree that the variance issue was not properly preserved in the trial court or the Court of Criminal Appeals. So the parties agree that the Court of Criminal Appeals should have reviewed the issue, if at all, under the plain error standard. Indeed, the State argued in its brief to this Court that the "Court of Criminal Appeals . . . erred by deciding the issue *sua sponte* under plenary review."

---

[7] In *State v. Weilacker*, the Court of Criminal Appeals initially found a defendant's constructive amendment issue waived for failure to raise it in his motion for new trial and declined to conduct a plain error analysis. 2017 WL 6210857 at *4. This Court summarily granted the ensuing application for permission to appeal and remanded to the Court of Criminal Appeals to conduct a plain-error review. *See Weilacker Order* (Tenn. May 21, 2018). We note the disparity of treatment on this issue of whether waiver would apply to variance in the intermediate court. *Compare State v. McCary*, 119 S.W.3d 226 (Tenn. Crim. App. 2003) (holding variance issue was waived) and *State v. Toth*, No. E2015-00022-CCA-R3-CD, 2016 WL 909106, at *12 (Tenn. Crim. App. Mar. 9, 2016) (deeming issue waived but examined on the merits), *perm. app. denied* (Tenn. Aug. 18, 2016) with *McLean v. State*, 527 S.W.2d 76, 82 (Tenn. 1975) (holding that a material variance "normally is not waived") and *State v. Perry*, No. W202001464CCAR3CD, 2022 WL 1025069, at *3 (Tenn. Crim. App. Apr. 6, 2022).

We certainly agree that the Court of Criminal Appeals erred in *sua sponte* raising and deciding the issue without the benefit of briefing by the parties. *See State v. Bristol*, 654 S.W.3d 917, 927–28 (Tenn. 2022). Even so, we need not reach the question of whether a criminal defendant may waive a variance issue. As we held above, the State properly met the requirements set forth in section 40-35-121 by alleging that Defendant was a member of the Crips and including "the required prior convictions constituting the [Crips'] pattern of criminal gang activity." Tenn. Code Ann. § 40-35-121(g). The indictment informed Defendant of the charges against him and that the State intended to enhance his sentence based on his affiliation with the umbrella gang, the Crips. The State provided sufficient notice to Defendant under the statute and subsequently provided supporting evidence at trial.

Moreover, in our view, the indictment and evidence substantially corresponded to one another, and there is no proof in the record indicating that Defendant was misled or surprised at trial. Consequently, even assuming there was some form of variance, it cannot be said that any perceived variance in this case was material or prejudicial. Therefore, we conclude that the intermediate court erred in holding that a "fatal variance [existed] between the indictment and the proof presented during the gang enhancement phase of trial," *Shackleford*, 2022 WL 818833, at *10, and we need not address whether such an issue may be waived by a criminal defendant.

Having addressed the issues raised in the parties' briefs, a remand to the Court of Criminal Appeals is not warranted and the trial court's judgments are reinstated. *See Hodge v. Craig*, 382 S.W.3d 325, 333–35 (Tenn. 2012) ("Subject to the exceptions in Tenn. R. App. P. 13(b), issues are properly raised on appeal to this Court when they have been . . . presented in the manner prescribed by Tenn. R. App. P. 27. . . . [Appellees] may present additional issues of their own seeking relief on grounds different than the grounds relied on by the appellant."); Tenn. R. App. P. 27(b).

### III. CONCLUSION

For the foregoing reasons, we conclude that the State met its statutory burden under Tennessee Code Annotated section 40-35-121, and the Court of Criminal Appeals erred in concluding that there was a fatal variance between the indictment and the proof presented during the gang-enhancement phase of trial. Therefore, the decision of the Court of Criminal Appeals is reversed and the trial court's judgments are reinstated. It appearing that Defendant, Dashun Shackleford, is indigent, costs of this appeal are taxed to the State of Tennessee.

_____
ROGER A. PAGE, CHIEF JUSTICE